**FOREST OIL CORP.,**
Plaintiff–Appellee,
Cross–Appellant,

v.

**STRATA ENERGY, INC.,**
Defendant–Appellant,
Cross–Appellee.

No. 88–6174.

United States Court of Appeals,
Fifth Circuit.

April 26, 1991.

John M. Zukowski, Daniel J. Brustkern, Campbell, Athey, Zukowski & Bresenhan, Houston, Tex., for defendant-appellant, cross-appellee.

James W. Wray, Jr., Deborah R. Sundermann, Kleberg, Dyer, Redford & Weil, Corpus Christi, Tex., for plaintiff-appellee, cross-appellant.

Before CLARK, Chief Judge, GARWOOD and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Strata Energy, Inc. (Strata) challenges the district court's judgment in favor of plaintiff-appellant Forest Oil Corporation (Forest), following a bench trial, that Strata is responsible for its proportionate amount of Forest's settlement of a personal injury action arising out of Forest and Strata's joint drilling operations. We affirm in part, reverse in part, and remand.

### Facts and Proceedings Below

In 1979, Forest and Strata entered into a joint evaluation agreement (the agreement), which was drafted by Forest, to develop certain oil and gas fields in South Texas. Under the agreement, Forest was the operator of this exploration and development project, whereas Strata was the non-operator, with two-thirds of the profits (or losses) going to Forest and one-third to Strata.

Under the insurance provision of the agreement, Forest was obligated to procure liability insurance for the benefit of

both parties. The insurance provision provided in pertinent part:

"Operator shall carry for the benefit and the expense of the joint account insurance with responsible insurance carriers as follows:

" . . . .

"2. General public liability ... *with limits of not less than* $100,000 covering injury to or death of one person, and *not less than* $300,000 covering injury to or death or [*sic*] more than one person by reason of one accident. . . .

" . . . .

"*No other insurance shall be carried at the expense of the joint account except by mutual consent of the parties.*" (Emphasis added.)

Prior to entering into the agreement, Forest purchased a number of umbrella coverage policies from various insurance companies, including a one million dollar primary liability policy from American Home Assurance Company (American) and a one million dollar excess liability policy from Southern Marine & Aviation Underwriters, Inc. (Southern). These two policies covered any liability (up to the stated amounts of coverage) arising out of Forest's various operations, including (but not limited to) those under the agreement. Forest was the named insured in each policy; neither expressly named Strata. The American policy provided in pertinent part:

## "ADDITIONAL INSUREDS—NON ACTIVE INTERESTS

"It is agreed that, with respect to exploration, development and/or operation of oil and gas properties solely by the Named Insured, at the option of the Named Insured this policy will cover as an additional insured any Co-owner, Joint Venturer, Mining Partner or other person, firm or corporation who is in itself or themselves not active in any way in such specific operation to be covered.

This coverage will apply *to those for whom the Named Insured has agreed in writing to provide insurance* in connection with such operations solely done by the Named Insured." (Emphasis added.)

The Southern policy provided in pertinent part:

"The unqualified word 'Assured' wherever used in this policy, includes: —

" . . . .

"(c) any ... organization ... to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, *but only to the extent of such obligation* and in respect of operations by or on behalf of the Named Assured or of facilities of the Named Assured or of facilities used by the Named Assured; ..." (Emphasis added.)

At trial, Forest's counsel represented that "Forest never billed Strata for any part of its insurance coverage because the cost would be negligible."

Pursuant to the agreement, work was commenced on a well in Webb County, Texas. During the drilling of that well in 1980, a fire broke out and four members of the drilling crew, employees of the drilling company that had contracted with Forest to drill the well, were injured. The four injured crew members, as well as the wife of one of them, brought a personal injury action against Forest and other defendants (the Gurney suit).[1] As required by the agreement, Forest notified Strata, which was not a named defendant, of the suit. The parties to the suit entered settlement negotiations. The agreement provided that any lawsuit (in excess of $5,000) against Forest, Strata, or both on an alleged claim arising out of their joint drilling operations

"may be settled during litigation only with the joint consent of both Parties which consent shall not be unreasonably withheld. . . . [A]ll expenses incurred, in the defense of suits, together with the amount paid to discharge any final judg-

---

1. Under the agreement, Forest was required to "furnish Non-operator an insurance certificate evidencing such insurance coverage prior to commencing operations hereunder." Forest concedes, however, that it did not furnish such an insurance certificate until some point *after* the accident precipitating the Gurney suit.

ment, shall be considered costs of operation and shall be charged to and paid by both Parties in proportion to their Percentage Interests at the time the cause of action arose."

Accordingly, Strata hired attorney Gay Brinson (Brinson) of the Vinson & Elkins law firm to monitor the negotiations and represent its interests. It is undisputed that, although Strata agreed that the case should be settled, it denied that it would owe any portion of such a settlement. The parties to the Gurney suit entered into an agreed judgment. Forest's insurers contributed $1,357,785 to that settlement on behalf of Forest, one million dollars of which was paid by American and the balance of which was paid by Southern.[2]

In 1985, Forest brought a diversity action against Strata, seeking damages for Strata's one-third portion of Forest's contribution to the agreed judgment in the Gurney suit. Forest amended its complaint, requesting prejudgment interest and joining Southern as a plaintiff. At no time was American a party to this suit. Following a bench trial, the district court held that Strata had consented to the settlement of the Gurney suit and, therefore, was responsible, under the clear terms of the agreement, for one-third of the settlement in excess of the stated insurance requirements of $100,000 for the injury of one person and $300,000 for the injury of more than one person involved in one accident. The district court entered judgment in favor of Forest, awarding (as corrected) $403,077.31 in damages and $239,292.25 in prejudgment interest. This appeal by Strata followed.[3]

**2.** Another party or parties to the Gurney suit contributed at least $300,000 to its settlement.

**3.** The district court entered its final judgment in favor of Forest on November 3, 1989. On November 22, Forest filed a motion to correct that judgment below by specifying an award of damages and prejudgment interest. On November 30, Strata filed a response to that motion. On December 1, both Strata and Forest filed notices of appeal. On December 16, the district court entered a corrected final judgment, adopting the damage award and prejudgment interest calculated by Forest. On February 23, 1990, a panel

**Discussion**

I. *Consent*

 In its first point of error, Strata contends that the agreement required its consent *in writing* to Forest's settlement of the Gurney suit and that it never gave Forest the requisite consent, a condition precedent for Forest's recovery of any portion of that settlement from Strata. Noting that Strata had hired Brinson to represent its interests in the settlement negotiations with respect to the Gurney suit, the district court held that "Strata participated in the lawsuit and through their attorneys, was involved in the settlement negotiations. Consent was not withheld by Strata...."

The agreement clearly required that both Strata and Forest consent to the settlement of any claim in excess of $5,000 arising out of operations under the agreement and that neither of them could unreasonably withhold such consent. Strata emphasizes that, although it agreed that it was prudent for Forest to settle the Gurney suit for $1,357,-785, it never agreed to pay any portion of that settlement. The consent provision under the agreement simply contemplated that both parties must acquiesce in such settlements or not unreasonably withhold such acquiescence. *See Canfield v. Foxworth–Galbraith Lumber Co.,* 545 S.W.2d 583, 587 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). By agreeing that Forest should settle the Gurney suit for the amount in question, Strata clearly consented to that settlement. This conclusion is not altered by Strata's preservation of the collateral issue of whether it was ultimately responsible for any portion of the settlement paid by Forest's insurers.

of this Court held that remand for reentry of the corrected final judgment was unnecessary because, under Rule 4(a)(2) of the Federal Rules of Appellate Procedure, the notices of appeal were to be treated as filed on December 16, 1989—the date that the corrected final judgment was entered. *See Forest Oil Corp. v. Strata Energy, Inc.,* No. 88–8174 (5th Cir. February 23, 1990) (unpublished). In light of this ruling and the district court's corrected final judgment, Forest asserts that the reasons for its filing of a notice of appeal is now moot.

Strata also contends that the agreement required that any consent to settlement of a lawsuit must be in writing and that it did not give written consent to Forest's settlement of the Gurney suit. The agreement stated, "All *notices*, reports, statements, and any and all other information given or furnished by the Parties or by the Operator shall be in writing (unless otherwise provided)...." Strata contends that consent to settlement is a notice in response to a notice of a pending lawsuit and, therefore, must be in writing.

██ Forest responds that Strata failed to raise the issue of written consent below and, therefore, waived that issue for purposes of appeal. Although Strata asserted below that it did not consent to Forest's settlement of the Gurney suit, the record does not reflect that Strata ever asserted that the agreement required that consent to settlement be in writing or that Strata did not give Forest *written*, as opposed to oral, consent to settle the Gurney suit. Nevertheless, even if this issue were properly raised on appeal, Forest persuasively points out that such written consent was not required under the agreement. A number of provisions in the agreement specifically required that certain communications between the parties be in writing. For example, the agreement provided that "[i]f either Party ... is sued ... on an alleged cause of action arising out of operations under this Agreement ... it shall give prompt written notice of the suit to the other Party." The consent provision, on the other hand, did not specifically provide that consent to settlement must be in writing.[4] Further, even if Strata did not consent to Forest's settlement of the Gurney suit, it is clear that Strata unreasonably withheld such consent in light of its concession that the settlement was prudent.[5]

## II. *Insurance Coverage*

Strata also contends that it was entitled to the full benefits of the insurance coverage procured by Forest for their joint drilling operations even though this coverage was substantially in excess of that Forest was required to procure under the agreement. The district court held that

"the Agreement as written clearly stated the limits of insurance that Forest was obligated to purchase for the benefit of the operation. There was no indication that the parties bargained for any more, and the Agreement allowed the parties to obtain more if they consented.

"....

"Therefore it is ORDERED AND ADJUDGED that Plaintiff, Forest, recover from the Defendant, Strata, one-third of the settlement paid in Forest's behalf that was not covered by the limits of the Agreement."

██ We review *de novo* a district court's interpretation of an unambiguous contractual provision under Texas law. Where the court resorts to extrinsic evidence in order to determine the intent behind an ambiguous provision, we defer to the court's interpretation unless it is clearly erroneous. Whether that provision is ambiguous, however, is a question of law reviewed *de novo*. *See Paragon Resources, Inc. v. National Fuel Gas Distribution Corp.*, 695 F.2d 991, 995 (5th Cir. 1983). Although Strata emphasizes that the agreement should be construed against Forest because Forest drafted the agreement, a contract generally is construed against its drafter only as a last resort under Texas law—*i.e.*, after the application of ordinary rules of construction leave a reasonable doubt as to its interpretation. *See, e.g., Smith v. Davis*, 453 S.W.2d 340, 344 (Tex.Civ.App.—Fort Worth 1970, writ

---

4. Forest also notes that, even if written consent to settlement were required, two letters by Brinson to an officer of Strata's parent company concerning the need to settle the Gurney suit, which were admitted as evidence, satisfied such a writing requirement.

5. Strata contended below that the accident underlying the Gurney suit was caused by the gross negligence of Forest and that Strata was not contractually liable for Forest's gross negligence under the agreement. The district court dismissed this contention as moot in light of its holding that Strata had consented to the settlement of the Gurney suit. Strata does not raise this issue on appeal.

ref'd n.r.e.). *See generally* 14 Tex.Jur.3d *Contracts* § 189 (1981).

The parties do not dispute the following facts. Under the agreement, Strata generally was responsible for one-third of the losses, including those resulting from the settlement of a lawsuit arising out of drilling operations covered by the agreement. Forest also was obligated to procure general public liability insurance for the benefit of both parties "with limits of not less than" $100,000 for injury of one person and $300,000 for injury of two or more persons involved in one accident.[6] Prior to entering into the agreement with Strata, Forest had procured a one million dollar primary policy issued by American and a one million dollar excess policy issued by Southern. These policies covered liability arising out of Forest's various operations, including (but not limited to) that arising out of its drilling operations with Strata. Forest did not charge Strata for any of the premiums for this coverage.[7] The parties, however, dispute whether Strata is entitled to the benefits of the insurance coverage procured by Forest in excess of that required under the agreement.

### A. *American primary policy*

■ As noted, Forest was required to procure liability coverage "with limits of not less than" $100,000/$300,000. Nevertheless, Forest had procured one million dollars in applicable primary coverage from American. This policy stated that it would apply to non-operators, such as Strata, "for whom the Named Insured [Forest] has agreed in writing to provide insurance in connection with such operations solely done by the Named Insured." The policy did not state that it would cover non-operators only to the extent that Forest was contractually required to provide such insurance. Thus, it is clear that Strata was an additional insured under the American policy to the full extent of its one million dollar primary coverage. Although Strata was responsible for one-third of the losses of the joint drilling operation, the agreement did not contemplate that Forest could recover from Strata its portion of those losses for which Strata was insured through coverage procured by Forest. The American policy was the only policy procured by Forest providing primary liability coverage in respect to operations under the agreement, and Forest hence must be deemed to have procured it to carry out its obligation under the agreement to procure liability insurance.

An alternative way of analyzing this issue is by asking who is the real party in interest to this action. In other words, American and Southern, not Forest, actually paid, as required by their policies, for Forest's portion of the Gurney suit settlement; therefore, to the extent that any recovery was sought from Strata for its proportionate amount of the one million dollars paid by American on behalf of Forest for the settlement, American was the real party in interest (even though it technically was not a named party to this action). At oral argument on appeal, Forest's counsel conceded that an insurer, such as American, can not assert a right of subrogation against its insured, such as Forest. Likewise, it follows from our determination that Strata was an additional insured under

---

**6.** Such an insurance provision may be desirable for a non-operator of a joint drilling project because of the possibility that the non-operator might arguably be treated as a partner. *Cf. Davidson v. Enstar Corp.,* 860 F.2d 167, 168 (5th Cir.1988) (relying on the determination in *Bertrand v. Forest Oil Corp.,* 441 F.2d 809 (5th Cir.), *cert. denied,* 404 U.S. 863, 92 S.Ct. 106, 30 L.Ed.2d 107 (1971), that, notwithstanding contractual language to the contrary, "the operator and non-operators [of an offshore oil well platform] were engaged in a partnership or joint venture as a matter of law" under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*); 57 Tex.Jur.3d *Partnership* § 26, at 354 (1987) ("operation of a mineral

property under a joint operating agreement does not of itself establish a partnership" (footnote omitted)); 56 Tex.Jur.3d *Oil and Gas* § 453, at 191–92 (1987); Texas Uniform Partnership Act (Art. 6132b, Vernon's Texas Civil Statutes) § 7(5) ("Operation of a mineral property under a joint operating agreement does not of itself establish a partnership").

**7.** At trial, Forest's counsel represented that the cost of Forest's insuring Strata for liability arising out of the operations under the agreement (at least for coverage not exceeding that required by the agreement) was negligible.

American's one million dollar primary policy that American can not assert a right of subrogation against Strata. Thus, we conclude that, as Strata was an additional insured under the American policy, Forest can not recover from Strata any portion of the one million dollars paid by American under its policy to settle the Gurney suit.

## B. *Southern excess policy*

█ The remaining question is whether Strata, though not named therein, was an insured under the one million dollar excess policy issued by Southern. Like the American primary policy, the Southern excess policy stated that it applied to "any organization ... to whom the Named Assured [Forest] is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy." The Southern policy, however, went on to state that such organizations were covered *"but only to the extent of such [contractual] obligation."* (Emphasis added.) Forest clearly was not obligated under the agreement to provide such excess insurance. It was only required to provide insurance with not less than $100,000/$300,000 primary coverage (and the American primary

policy wholly fulfilled any such obligation). Thus, Strata was not an insured under the Southern excess policy and, therefore, was not entitled to the benefits of that policy. *See Musgrove v. Southland Corp.*, 898 F.2d 1041, 1043 (5th Cir.1990) (under Louisiana law, where contractor was contractually obligated to provide liability insurance of not less than one million dollars per occurrence for itself and refinery owner, owner was not an insured under contractor's policy covering only those losses in excess of one million dollars because "that policy does not afford the coverage which [owner's] contract with contractor required").[8]

## Conclusion

In sum, we affirm the judgment of the district court to the extent that it held that Strata consented to Forest's settlement of the Gurney suit and was not an insured under the Southern policy, and we reverse the district court to the extent that it held that Strata was not an insured under the American policy. In light of these conclusions, we remand to the district court for a determination of the appropriate award of

8. Strata relies on *Lirette v. Union Tex. Petroleum Corp.*, 467 So.2d 29 (La.App.1985) (construing Texas law), and *Maxus Exploration v. Moran Bros.*, 773 S.W.2d 358 (Tex.App.—Dallas 1989, *writ granted*) (same), for the proposition that the "no less than" language in the insurance provision of the agreement clearly establishes a minimum, not a maximum, coverage requirement and that Strata, therefore, is entitled to the benefits of any insurance voluntarily procured by Forest in excess of that requirement. Forest, on the other hand, relies on *Smith v. Shell Oil Co.*, 746 F.2d 1087 (5th Cir.1984) (construing Louisiana law); *Hicks v. Ocean Drilling & Exploration Co.*, 512 F.2d 817 (5th Cir.1975) (same), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639 (1976); and *Dickerson v. Continental Oil Company*, 449 F.2d 1209 (5th Cir. 1971) (same), *cert. denied*, 405 U.S. 934, 92 S.Ct. 942, 30 L.Ed.2d 809 (1972), for the proposition that the agreement establishes both a minimum and maximum insurance coverage requirement and, therefore, that Strata was not entitled to the benefits of any insurance procured by Forest in excess of that requirement.

All five of these cases, however, involved contracts with essentially unlimited indemnity provisions and, therefore, are materially different

from the agreement in the present case, which does not contain such a provision. Likewise, the cited cases (except for *Smith*, which is clearly inapposite) all involve the indemnitor's contractual disability insurance; here we are concerned with tort liability insurance procured by the indemnitee and a clause requiring the indemnitee to procure that kind of insurance.

*Lirette* and *Maxus* involved contract provisions requiring the indemnitee to procure contractual liability insurance to cover its otherwise unlimited contractual indemnity obligations and the validity and effect of such provisions under the Texas statute regulating oil field indemnity contracts. *See* former Tex.Rev.Civ. Stat.Ann. art. 2212b § 4(c) (now codified, as amended, as Texas Civil Practice and Remedies Code § 127.005). *Hicks* and *Dickerson* also involved the effect of contract provisions requiring the indemnitor to procure contractual liability insurance covering its otherwise unlimited contractual indemnity obligations, but did not involve statutory regulation of indemnity contracts. *Smith*, likewise a nonstatutory case, held that a contract provision requiring the indemnitor to procure tort (and workers compensation) insurance, and not referencing the separate contractual indemnity provision, did not limit the indemnitor's liability under the latter.

damages and prejudgment interest to Forest, Southern, or both.[9]

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part, and the cause is remanded.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

---

**9.** In its corrected final judgment, the district court ordered that Forest recover $403,077.31 in damages and $239,292.25 in prejudgment interest from Strata. In light of our conclusion that Strata is not an insured under Southern's policy, it is apparent that Southern, which paid $357,785 on behalf of Forest in settlement of the Gurney suit, is entitled to recover Strata's portion of that amount.

Strata also contends that the district court erred in utilizing the twelve percent rate of interest under the agreement in determining the amount of prejudgment interest. Forest responds that Strata waived this claim by failing to raise it in its opening brief or below. Strata, however, filed its opening brief one day prior to the district court's entry of its corrected final judgment, which adopted Forest's calculation of the prejudgment interest using the contractual interest rate. A panel of this Court subsequently treated the parties' notices of appeal as having been filed on the same day that the corrected final judgment was entered and held that remand for reentry of that judgment was unnecessary. *See Forest,* No. 88–8174. Neither party contests that ruling. Further, Strata raised this issue below in its response to Forest's motion to correct final judgment. Under the circumstances, we consider it appropriate to reach this issue.

The agreement provided in pertinent part:

"Each Non–Operator shall pay its proportion of all bills within fifteen (15) days after receipt. If payment is not made within such time, the unpaid balance shall bear interest monthly at the rate of twelve percent (12%) per annum or the maximum contract rate permitted by the applicable usury laws in the state in which the Joint Property is located, whichever is the lesser, plus attorney's fees, court costs, and other costs in connection with the collection of unpaid amounts."

The agreement clearly contemplates that interest will not accrue at the contractual rate until fifteen days after Forest has billed Strata for the claim in question. Strata contends that no evidence was presented that Forest billed Strata for its portion of Forest's contribution to the Gurney suit settlement. It is clear that the district court's corrected final judgment did not include such a finding (nor was such a finding otherwise made by the district court). Under the circumstances, remand is necessary for a determination of whether (and if so, when) Forest billed Strata for its portion of Forest's contribution to the Gurney suit settlement and, therefore, whether (and if so, when) the rate of interest specified in the agreement (or some other interest rate) should be used in calculating the applicable prejudgment interest (or whether any prejudgment interest is appropriate in the absence of, or prior to, such billing).