Emilio URRUTIA and Penske Truck
Leasing Co., L.P., Petitioners,

v.

Ferol DECKER, Respondent.

No. 98–0554.

Supreme Court of Texas.

Argued Jan. 13, 1999.

Decided April 8, 1999.

Tim S. Leonard, David Scott Curcio, John B. Wallace, William Douglas Hammond, Mark D. Flanagan, Houston, for petitioners.

Dan Hennigan, Houston, for respondent.

Chief Justice PHILLIPS delivered the opinion for a unanimous Court.

This case requires us to determine the validity of liability insurance a truck leasing company provided to its customer as part of a rental transaction. Based on representations that $20,000 was all the insurance available, the claimant settled his bodily injury claim for that amount. When he later discovered the nature of the leasing company's insurance arrangement, he sued the leasing company and its customer, seeking to set aside the previous settlement. The claimant urged that the settlement was obtained by fraud or resulted from the parties' mutual mistake about the insurance available to pay his claims.

The trial court granted summary judgment for the leasing company and its customer. The court of appeals reversed and remanded, holding that the claimant had raised a fact issue on mutual mistake because the rental agreement was not written on a form approved by the State Board of Insurance and was not written into the policy, as required by article 5.06(2) of the Texas Insurance Code. At a minimum, the court held, this failure raised a fact issue about whether the rental agreement was effective to limit the customer's liability insurance to $20,000 instead of the much larger sum available under the leasing company's master policy. 965 S.W.2d 26. Because we disagree with the court of appeals' conclusion about the effect of the rental agreement, we reverse the judgment of the court of appeals and render judgment that the claimant take nothing.

Old Republic Insurance Company insured Penske Truck Leasing Company under a commercial business auto policy. This policy, issued in the state of Pennsylvania, provided one million dollars of liability protection to Penske. An endorsement to the Old Republic policy [the "Pennsylvania endorsement"] enlarged the policy's definition of "insured" to include certain customers of Penske as follows:

### WHO IS AN INSURED

It is agreed Section II. A. 1 of Business Auto Coverage Form CA0001 (12–93) is amended to include the following:

C. Both lessees and rentees of covered autos as insureds, but only to the extent and for the limits of liability agreed to under contractual agreement with the named insured.

This endorsement authorized Penske to add any rental customer as an insured under the Old Republic policy for the liability limits negotiated in a particular rental agreement.

Emilio Urrutia leased a truck from Penske in Houston. As part of the transaction, Penske agreed to provide liability protection to Urrutia. The rental agreement limited this insurance to the minimum coverage required by our state financial responsibility law.[1] The rental

1. Paragraph 6 of the Rental Agreement provided in pertinent part:

   *6.LIABILITY PROTECTION (L.P.).* The party (either: Lessor or Customer) as indicated by the initials or signature of the person signing this Agreement on the reverse side shall, at its sole cost, provide liability protection for Customer and any operator authorized by Lessor, and no others, and for Lessor and its partners and their respective agents, servants and employees, in accordance with the standard provision of a Basic Automobile Liability Insurance Policy as required in the jurisdiction in which Vehicle is operated, against liability for bodily injury. including death and property damage arising out of the ownership, mainte-

agreement accordingly provided Urrutia with liability coverage of $20,000 for bodily injury to a single third party. *See* TEX. TRANSP. CODE § 601.072 (prescribing minimum liability protection of $20,000/$40,000/$15,000).

While operating the Penske truck, Urrutia collided with a car driven by Ferol Decker. Mr. Decker sustained serious injuries and incurred substantial medical expenses. He nevertheless agreed to settle his personal injury claims against Urrutia and Penske for $20,000 because he understood from an insurance adjuster calling on behalf of Urrutia that this was all the insurance available. As part of the settlement, Decker released both Urrutia and Penske. Later, Decker learned about Penske's million-dollar liability policy and filed this suit, seeking to reopen his personal injury claim.

Urrutia and Penske asserted the settlement agreement in defense and moved for summary judgment against Decker. Decker responded that the settlement was invalid because it was obtained by fraud or mutual mistake. The trial court disagreed and granted summary judgment.

The court of appeals reversed and remanded, concluding that the parties made a mutual mistake of fact by reading the rental agreement to limit Urrutia's liability coverage to $20,000. The court of appeals held that the rental agreement could not effectively limit coverage because the insurance provisions in that agreement were void under article 5.06(2) of the Texas Insurance Code. 965 S.W.2d at 29.

Article 5.06(2) provides that a "contract or agreement not written into the application and policy is void and of no effect." TEX. INS.CODE art. 5.06(2). Applying this statute, the court of appeals concluded that the rental agreement between Penske and Urrutia was void as insurance because the agreement was not "written into" the Old Republic policy. The court did not find a similar problem with the Pennsylvania endorsement, however, which allowed Penske to extend its insurance to Urrutia. The court of appeals did not explain why the Pennsylvania endorsement was valid to amend the policy while the Texas rental contract was not.

Penske suggests that the court of appeals must have reasoned that the Texas rental agreement was not a part of the Old Republic policy because it was not attached to the policy like the Pennsylvania endorsement. But the rental agreement did not have to be attached to the Old Republic policy to be effective. In *Fidelity Union Life Ins. Co. v. Methven*, 162 Tex. 323, 346 S.W.2d 797, 800 (1961), we concluded that all endorsements "should be attached to insurance policies, but failure to attach them does not invalidate them." Texas law has long provided that a separate contract can be incorporated into an insurance policy by an explicit reference clearly indicating the parties' intention to include that contract as part of their agreement. *Goddard v. East Tex. Fire Ins. Co.*, 67 Tex. 69, 1 S.W. 906, 907 (1886).

Moreover, although the court of appeals held that the rental agreement was void for insurance purposes, it nevertheless relied on the agreement to identify Urrutia as an insured. The court did not explain why the rental contract was void for the purpose of defining Urrutia's coverage but valid for the purpose of making Urrutia an insured in the first place. We find no

---

nance, use and operation of Vehicle as permitted by this Agreement, with limits as follows:
(A) *IF "LESSOR PROVIDES L.P." IS INITIALED * * * LESSOR SHALL PROVIDE: IF A TRUCK,* primary coverage of $10,000 each person, $20,000 each accident for bodily injury, including death and $5000 each accident for property damage or with limits of liability up to the requirements of the Financial Responsibility Law or other applicable statute of the state or municipality in which the accident occurred whichever is greater.
* * *

justification for this selective application of the rental contract.

Urrutia's coverage under the Old Republic policy depended on both the Texas rental contract and the Pennsylvania endorsement. The Pennsylvania endorsement enlarged the policy's definition of "insured," authorizing the named insured, Penske, to add its rental customers as additional insureds. The endorsement, however, allowed Penske to determine in the rental contracts themselves which customers would be insured and the amount of their respective coverage. An insurer may validly agree to add as an additional insured "any person or organization to which the named insured is obligated by virtue of a written contract to provide insurance." 21 DORSANEO, TEXAS LITIGATION GUIDE § 341.07[2][h] at 341–57 (July 1998), *citing Forest Oil Corp. v. Strata Energy, Inc.*, 929 F.2d 1039, 1044–45 (5th Cir.1991). Such an endorsement also "may provide lower coverage limits to the additional insured than to the named insured," as the rental contract did here. *See id.*, DORSANEO at 341–57–58. The Texas rental contract was thus also an endorsement to the Old Republic policy, supplying the limits of coverage and extending those benefits to the customer identified therein as accepting Penske's offer of insurance.

Furthermore, the Pennsylvania endorsement clearly referred to the rental agreements between Penske and its rental customers as the basis for extending and limiting insurance coverage to these customers. Accordingly, Penske's rental agreement with Urrutia was sufficiently "written into" the Old Republic policy through the Pennsylvania endorsement. The insurance provisions in the rental agreement were therefore not void by reason of inadequate incorporation into the policy.

The court of appeals also held that the Texas rental contract was void as an endorsement to the Old Republic policy because it was not in a form approved by our State Board of Insurance. While we agree that the rental agreement did not have board approval for use as an insurance contract, we do not agree that this rendered the insurance provisions of the rental agreement void.

Insurers doing business in this state are required to use policies and endorsements approved by our State Board of Insurance. TEX. INS.CODE art. 5.06(2). Insurers who do not use board-approved policies and endorsements may be subject to penalty. TEX. INS.CODE art. 5.06(2); *Springfield v. Aetna Cas. & Sur. Ins. Co.*, 620 S.W.2d 557, 558 (Tex.1981). Furthermore, these insurers may not be able to enforce agreements written on unapproved forms. This Court has said that an unapproved endorsement or clause that conflicts with an approved provision in a standard form policy is unenforceable. *Commercial Union Assurance Co. v. Preston*, 115 Tex. 351, 282 S.W. 563, 565 (1926).

But this case is different from *Commercial Union*. Here the insurance provisions in the Texas rental contract, while lacking board-approval, do not conflict with any approved standard form policy or provision. In fact, the unapproved Texas rental endorsement to the Old Republic policy is the only basis for extending insurance benefits to Urrutia. To void the insurance provisions in the Texas rental agreement under these circumstances would penalize the innocent insured, not provide him more protection. *See Travelers Ins. Co. v. Chicago Bridge & Iron Co.*, 442 S.W.2d 888, 893 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.)(insured is not deprived of coverage merely because the insurer did not use the approved policy form). Because insurance sold through an unapproved policy is voidable, the insured may, upon learning that the insurance is unapproved, elect to rescind it. If the insured elects to accept the insurance, however, he or she must do so under the agreed terms. *See Imperial Premium Fin., Inc. v. Khoury*, 129 F.3d

347, 350 (5 th Cir.1997)(insured cannot select the good and discard the bad); *Hertz Corp. v. Pap,* 923 F.Supp. 914, 922 (N.D.Tex.1995)(insured cannot chose to void unfavorable language and retain remainder of unapproved policy), *aff'd,* 98 F.3d 1339 (5 th Cir.1996); *McLaren v. Imperial Cas. & Indem. Co.,* 767 F.Supp. 1364, 1376 (N.D.Tex.1991)(insured must take or leave the policy in its entirety), *aff'd* 968 F.2d 17 (5 th Cir.1992), *cert. denied,* 507 U.S. 915, 113 S.Ct. 1269, 122 L.Ed.2d 665 (1993); *cf. Mutual Life Ins. Co. of N.Y. v. Daddy$ Money, Inc.,* 646 S.W.2d 255, 257 (Tex.App.—Dallas 1982, writ ref'd n.r.e.)(when policy has board approval but conflicting endorsement does not, insurer cannot enforce endorsement).

In this case, Urrutia has accepted the insurance benefits extended to him through the Texas rental agreement. Accordingly, the court of appeals erred in voiding the insurance provisions in the rental agreement merely because they were not written on forms prescribed by the State Board of Insurance.[2]

In summary, the liability insurance Penske sold Urrutia was voidable because it did not have board approval. It was not void, however. Furthermore, the Texas rental agreement was sufficiently incorporated into the Old Republic policy to satisfy the requirements of article 5.06(2). Finally, the rental agreement clearly limited the liability protection extended to Urrutia to $20,000 for bodily injury. Accordingly, we reverse the judgment of the court of appeals and render judgment that Decker take nothing.

---

**2.** Since the accident in this case, the Legislature has enacted new legislation, clarifying the application of insurance laws to car rental companies. *See* TEX. INS.CODE art. 21.07 § 21(Rental Car Companies); *see* also Tex. S.B. 522, 76 th Leg., R.S. (1999)(proposing to amend section 21 to include trailers and trucks). The Commissioner of Insurance has, in turn, adopted new policy forms and rules to implement the new statute. *See* Commissioner of Insurance Order No. 98–0513, 23 Tex. Reg. 4927 (May 15, 1998)("Adoption of a Texas Automobile Rental Liability Policy and a Texas Automobile Rental Liability Excess Policy and Amendments to the Texas Automobile Rules and Rating Manual to Provide Rules and Rates Governing Such Policies").