

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-12-00470-CV

CITY OF CARROLLTON                                                       APPELLANT

V.

FRED LOYA INSURANCE                                                       APPELLEE
COMPANY

----------

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 2010-40236-362

----------

## MEMORANDUM OPINION[1]

----------

This case revolves around whether an insured, Danelle Butts, validly added her daughter, Donna, back to her insurance policy so that the daughter's car accident with a pedestrian was covered by the policy. Because we hold that material issues of fact preclude summary judgment, we reverse and remand.

---

[1]*See* Tex. R. App. P. 47.4.

**Facts**

Danelle had an automobile insurance policy through Appellee Fred Loya Insurance. On August 3, 2007, Danelle amended her policy to exclude her daughter Donna from coverage under the policy because Donna moved out of the family home.

Less than a month later, Danelle requested that her daughter be added back onto the policy because she was moving back into the home. The auto policy change request form was filled out by a Loya employee who wrote at the bottom of the form, "Added Donna M. Butts as per insured's request." Danelle dated her signature at the bottom of the form "8/30/07." At the top of the form, in the blank for "change effective date," the Loya employee wrote the date of August 31 but left blank the space for the time. The form was faxed to Loya from BenefitMall.com at 11:56 a.m. on August 31; Danelle worked for Benefit Mall at the time. Loya faxed a document entitled "Endorsements" at 12:01 on August 31 to Benefit Mall. It is not clear from the fax stamp whether 12:01 was in the early morning hours or just after noon. Linda Davila, a Loya employee, testified in deposition that she assumed that the absence of an "a.m." or "p.m." would indicate that the fax was transmitted after noon. She based that assumption on military time but conceded that she did not base that assumption on her knowledge of Loya fax machines.

On August 31, 2007, at approximately 8:35 a.m., Donna, driving Danelle's vehicle, struck Appellant City of Carrollton's employee Diego Salinas.

Danelle's premium payment was processed by Loya after the accident.

Salinas was in the course and scope of his employment when the accident happened. The City paid workers' compensation benefits for his medical expenses and lost wages. The City then sued Donna and Danelle, asserting equitable subrogation and statutory subrogation under the labor code.[2] Donna and Danelle tendered the suit to Loya for defense and indemnity under the policy. Loya denied the claim on the ground that on the date of the accident, August 31, Donna was excluded from coverage under the policy. Loya concedes that the endorsement adding Donna back to the policy was issued August 31 but states that it nevertheless denied coverage after discovering that Danelle had attempted to add Donna back to the policy after the accident occurred.

The suit proceeded to trial, and the trial court rendered final judgment against Donna and Danelle, jointly and severally, in the amount of $54,222.92. Danelle and Donna assigned to the City any claims they had against Loya.

The City then filed this suit against Loya. The City sought a declaration (1) that Donna and Danelle were both covered under the policy on August 31, 2007; (2) that Loya was estopped from asserting and had waived any position otherwise; and (3) that Loya breached its policy obligations by denying coverage. The City also asserted that the policy and policy forms were ambiguous and that any ambiguity should be interpreted in favor of coverage. The City asserted that

---

[2]Tex. Labor Code Ann. §§ 417.001–.004 (West 2006).

3

material breach, substantial performance, lack of prejudice, waiver, estoppel, ratification, and ambiguity precluded Loya from relying upon the exclusion or policy limits that it had asserted.

Loya's answer asserted that Donna was a named excluded driver under the policy and that Danelle had failed to comply with the terms and conditions of the insurance contract. Loya filed a motion for summary judgment, which the trial court denied.

The City then moved for partial summary judgment, and Loya filed a second summary judgment motion. The City sought both a traditional and no-evidence partial summary judgment on the grounds that

1. The auto policy change request form and the provisions within the policy related to the change request are ambiguous as a matter of law;

2. Danelle substantially complied with the policy when she signed the form on 8/30/07 and paid the additional premium thereafter;

3. Loya is precluded from denying coverage for the accident because it suffered no prejudice (no-evidence ground);

4. Loya waived any right to deny coverage and was estopped from denying coverage;

5. Loya could not meet its burden to show that Donna was excluded from the policy at the exact moment that the accident occurred or

4

that Donna and Danelle had otherwise failed to comply with the terms and conditions of the policy (no-evidence ground).

Loya asserted in its motion that the City did not make a settlement demand within the limits of the policy, and therefore the City could not assert a *Stowers* claim. It also asserted that the change adding Donna to the policy did not become effective until several hours after the accident, that she was therefore not covered under the policy at the time of the accident, and that Loya consequently did not breach its contract by refusing coverage for the accident. If the breach of contract claim failed, Loya asserted, it had no liability for extra-contractual claims under the DTPA or insurance code. Loya further argued that the City's equitable arguments all failed because insurance coverage is contractual and cannot be created through the use of equitable doctrines.

The summary judgment evidence includes deposition excerpts from Danelle, Donna, and Loya employees, as well as an affidavit from Lana Ruiz, Loya's underwriting manager, a copy of the insurance policy, and copies of the confirmation of the change excluding Donna from the policy as of August 3, the change request form to add her back to the policy, the receipt for the premium payment, and the document entitled "Endorsements."

The policy states that its terms "may not be changed or waived except by endorsement issued by us" but does not state that an additional premium must be received before an endorsement is generated. In her affidavit, Ruiz stated that an endorsement is generated as a result of an automated computer

5

transaction that cannot occur without the payment of the premium and that there is no way to manually override this process. Ruiz stated that because of this process, the endorsement adding Donna onto the policy could not have been issued until payment occurred. In her deposition, however, Ruiz intimated that the auto policy change request form was the endorsement.

In Donna's deposition, she stated that at the accident scene, the police officer asked for proof of insurance, and her mother met her at the scene with an insurance ID card from Loya that had Donna's name on it.

Linda Davila, a Loya employee, stated in her deposition that she was not familiar with all Loya fax machines but that she would assume that the absence of both an "a.m." and "p.m." from the 12:01 fax Loya sent on the day of the accident would mean that the fax was transmitted after noon, based on her knowledge of military time. She conceded that that assumption was not based on knowledge of Loya fax machines.

The trial court denied the City's motion and granted Loya's. The City now appeals.

**Standard of Review**

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of

material fact exists and that the movant is entitled to judgment as a matter of law.[3] We review a summary judgment de novo.[4]

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[5] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[6] If uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.[7] We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented.[8] The summary judgment will be affirmed only if the record

---

[3]Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[4]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[5]*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

[6]*Mann Frankfort*, 289 S.W.3d at 848.

[7]Tex. R. Civ. P. 166a(c); *Morrison v. Christie*, 266 S.W.3d 89, 92 (Tex. App.—Fort Worth 2008, no pet.).

[8]*See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.[9]

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented.[10] The reviewing court should render the judgment that the trial court should have rendered.[11]

**Ambiguity**

In its second issue, the City contends that the trial court erred by denying its motion for summary judgment and by granting Loya's motion for summary judgment because the evidence establishes as a matter of law that the policy is ambiguous as to (1) how additional insureds are to be added to the policy and (2) when such addition is effective. In its sixth issue, the City alternatively argues that fact issues exist regarding (1) whether its own interpretation of the policy as to how additional insureds may be added back to the policy and when such additions are effective is reasonable and (2) when the auto policy change request

---

[9]*City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

[10]*Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009).

[11]*Mann Frankfort*, 289 S.W.3d at 848.

8

form became effective, as both the policy and change request form lacked that information.

***The Policy***

The policy provides,

AGREEMENT

***In return for payment of the premium and subject to all the terms of this policy*** we agree with you as follows:

DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

  1. The "named insured" shown in the Declaration, and

  2. The spouse if a resident of the same household.

B. "We", "us" and "our" refer to the Company providing this insurance.

. . . .

D. "Family member" means a person who is a resident of your household and related to you by blood, marriage or adoption.  . . .

. . . .

PART A—LIABILITY COVERAGE

INSURING AGREEMENT

A. We will pay damages for bodily injury or property damage for which ***any covered person*** becomes legally responsible because of an auto accident.  . . . We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.  In addition to our limit of liability, we will pay all defense costs we incur.  Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

B. ***"Covered person" as used in this Part means:***

1.    You or any family member for the ownership, maintenance or use of any auto or trailer.

2.    Any person using your covered auto.

3.    For your covered auto, any person or organization but only with respect to **legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.**

. . . .

PART F—GENERAL PROVISIONS

. . . .

CHANGES

A.    This policy contains all the agreements between you and us. **Its terms may not be changed or waived except by endorsement issued by us.**

B.    **If a change requires a premium adjustment, we will adjust the premium as of the effective date of change in accordance with rules prescribed by the Texas Department of Insurance or its successor.  Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in**

1.    . . . ;

2.    **Operators using insured autos;**

3.    . . . ;

4.    **Coverage,** deductible, or limits.

C.    If this policy form is revised to provide more coverage without additional premium charge, we will automatically provide the additional coverage as of the date the revision is effective.

. . . .

SPECIAL PROVISIONS

This Company is licensed to operate under Chapter 912 of the Texas Insurance Code, as amended, and such statutes shall apply to and form a part of this policy the same as if written or printed upon, attached or appended hereto.

This policy is issued subject to the constitution and by-laws and all amendments thereto of the Company, which shall form a part of this policy.

ENDORSEMENTS

. . . .

515A.    EXCLUSION OF NAMED DRIVER AND PARTIAL REJECTION OF COVERAGES

**WARNING**

READ THIS ENDORSEMENT CAREFULLY!

This acknowledgement and rejection is applicable to all renewals issued by us or any affiliated insurer.

However, we must provide a notice with each renewal as follows: "This policy contains a named driver exclusion."

***You agree that none of the insurance coverages afforded by this policy shall apply while The Excluded Driver is operating your covered auto or any other motor vehicle.*** [Emphasis added.]

***Analysis of Donna's Policy with Loya***

"When we interpret . . . form policies, the intent of the parties is not what counts because they did not write the contract. Rather, the policy language is

11

interpreted according to the ordinary, everyday meaning of its words to the general public."[12]

Nothing in the policy language expressly requires the payment of an *additional* premium before a modification to add an additional covered driver takes effect in the ongoing contract between the parties. Further, exactly when any additional premium would be due (in hours, minutes, and seconds) is not spelled out or discussed; the policy provides that if a change requires a premium adjustment, the premium will be adjusted "as of the effective **date** of change." [Emphasis added.]

The policy provides that "***[i]ts terms may not be changed or waived except by endorsement issued by [Loya].***" [Emphasis added.] Thus, by the policy's plain language, Loya's issuance of an endorsement accomplishes the modification of its terms. The policy is therefore not ambiguous as a matter of law as to when the modification takes effect; the modification takes effect when Loya issues the endorsement. We overrule the City's second issue.

But we hold that there are fact issues as to whether—by virtue of an agreement between Loya and Danelle via the auto policy change request form— Loya's obligation to issue the endorsement arose before the accident and when Loya issued the endorsement.

---

[12]*Greene v. Farmers Ins. Exch.*, No. 12-0867, 2014 WL 4252271, at *4 (Tex. Aug. 29, 2014) (citation omitted).

During her deposition Loya's employee, Ruiz, equated the auto policy request form with the endorsement and also treated it as part of the endorsement:

Q. [by the City's trial counsel] Okay. ***Let me show you what I've had marked for identification purposes as Exhibit 5. That is a document from Loya's records that's entitled "Auto Policy Change Request***," correct?

A. Yes.

Q. Have you seen that document before?

A. Yes.

Q. That's the auto policy change request at issue in this case, isn't it?

A. Yes.

. . . .

Q. Now, look down at the bottom of Exhibit 5. There's a signature there that says "Danelle Butts 8/30/07"; do you see that?

A. Yes.

Q. And that's what it says, right?

A. Yes.

Q. Then up above that, there's the handwritten language that says "Added Donna M. Butts as per insured's request"; do you see that?

A. Yes.

Q. Do you know who wrote that?

A. The CSR.

Q. The customer service representative?

A. Yes.

*Q. How do you know that?*

*A. The CSR is the person that fills out the endorsement.*

*Q. And how do you know that?*

*A. Their name up at the top right-hand corner where it says "Branch, CSR, Phone."*

*Q. Okay. You're referring to some information at the top right-hand corner of Exhibit 5, correct?*

*A. Yes.*

. . . .

*Q. And then under that, it says "CSR." What does that refer to?*

*A. The person who filled out the endorsement.*

. . . .

Q. So it's your belief that the handwriting at the bottom above Danelle Butts' signature and the date August 30th, 2007 where it says "Added Donna M. Butts as per insured's request" is that of Paula Steed, a customer service representative for Loya?

A. I believe it is.

Q. And then right above that is—there's a blank filled in for amount paid, $96; do you see that?

A. Uh-huh.

Q. You need to answer out verbally, please.

A. Yes.

Q. Okay. Is that also filled out by Paula Steed?

A. Yes.

*Q. Is there anything on this form that is not filled out by the Loya customer service representative, other than the signature of Danelle Butts and the date of August 30th, 2007?*

*A. No. The CSR will fill out the whole endorsement.*

14

*Q. That's the way it's done?*

*A. Yes.*

. . . .

*Q. Is there any way, any record, anything that we could look at to determine when Paula Steed wrote the words "Added Donna M. Butts as per insured's request"?*

*A. It would have been—this whole endorsement is filled out the day on the change effective date, which is 8/31/07.*

. . . .

*Q. So you—what is your understanding, though? Is the form generally completed by the customer service representative for Loya and then sent to the—or provided to the insured to sign?*

*A. Yes. That's my understanding, is that the endorsement is filled out prior to being sent to the insured.* [Emphasis added.]

She also later distinguished the auto policy change request form from the endorsement. And a different form document generated by Loya, dated August 31, and entitled "Endorsements" is also in the summary judgment evidence. We note that endorsements must be approved by the Texas Department of Insurance; otherwise, an insurer is subject to penalties.[13]

The auto policy change request form was filled out by a Loya employee who wrote at the bottom of the form, "Added Donna M. Butts as per insured's request." Danelle dated her signature at the bottom of the form "8/30/07." On

---

[13]*See Urrutia v. Decker*, 992 S.W.2d 440, 443 (Tex.), *cert. denied*, 528 U.S. 1021 (1999) (stating same regarding State Board of Insurance, predecessor to Texas Department of Insurance); *see also* Tex. Ins. Code Ann. §5.06(2) (West 2009).

15

the form blank for "change effective date," the Loya employee wrote the date of August 31 but left blank the space for the time.

Additionally, the document entitled "Endorsements" was faxed to BenefitMall at 12:01 on August 31, but the fax stamp does not indicate whether the transmission occurred at 12:01 a.m., before the accident, or 12:01 p.m., after the accident. Davila stated in her deposition that she would assume that the absence of both an "a.m." and "p.m." would mean that the fax was transmitted after noon, based on her knowledge of military time. But she conceded that that assumption was not tied to any specific knowledge of Loya fax machines.

In addition to the issues of fact regarding when Loya's obligation to issue the endorsement was created and when Loya did in fact issue the endorsement, there is no evidence of Texas Department of Insurance rules, referenced globally in the policy, that may have applied regarding premium adjustments or the effectiveness of endorsements in such a situation as occurred here.

Consequently, taking as true all evidence favorable to the movant,[14] we hold that there are material issues of fact concerning when Loya issued the endorsement and when its obligation to do so arose. Because Loya has failed to conclusively establish that its obligation to issue the endorsement did not arise

---

[14]*See 20801, Inc.*, 249 S.W.3d at 399; *Provident Life & Accident Ins. Co.*, 128 S.W.3d at 215.

until after the accident, summary judgment for Loya was improper. We sustain the City's sixth issue to that extent.

**Substantial Compliance and Prejudice**

In its first issue, the City contends that the trial court erred by denying its motion for summary judgment and by granting Loya's motion for summary judgment because the evidence establishes as a matter of law that Danelle substantially complied with Loya's alleged requirements for adding Donna back to the policy before the accident. In its third issue, the City contends that the summary judgment evidence establishes as a matter of law that Loya was not prejudiced by any purported noncompliance with the terms and conditions of the policy by Danelle or Donna and that Loya did not prove such prejudice as a matter of law. These issues are intertwined with the fact issues identified above. We therefore do not reach them.[15]

**Waiver, Estoppel, and Ratification**

In its fourth issue, the City contends that the evidence establishes as a matter of law that Loya waived its right to deny coverage or was estopped from denying coverage. In its fifth issue, the City contends that Loya ratified the date of August 30, placed by Danelle's signature on the auto change request form, as the effective date of coverage. But we have already held that issues of fact exist concerning whether Donna was covered by the policy when the accident

---

[15]*See* Tex. R. App. P. 47.1.

17

occurred. We therefore cannot now determine these equitable issues as a matter of law. We overrule the City's third, fourth, and fifth issues.

**Remaining Issues**

In the rest of its sixth issue, the City alleges other issues of fact. In its seventh issue, it challenges the affidavit of Ruiz. Because we have already determined that summary judgment is improper because material fact issues are present, we do not reach these remaining issues.[16]

**Conclusion**

Having held that material issues of fact exist regarding the timing of Loya's obligation to issue the endorsement as well as the timing of the endorsement's issuance, and having also held that the City's issues of law cannot be determined against Loya while those issues of fact remain undetermined, we sustain the City's sixth issue in part, overrule its first five issues, and do not reach the remainder of the sixth issue or the seventh issue. We reverse the trial court's judgment and remand this case to the trial court.

---

[16]*See id.*

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED:  December 31, 2014