# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0670
════════════

In re Deepwater Horizon, Relator

════════════════════════════════════════════
On Certified Questions from the
United States Court of Appeals for the Fifth Circuit
════════════════════════════════════════════

Justice Johnson, dissenting.

I do not materially disagree with the Court's explication of principles applicable to construing insurance contracts, but I disagree with how it applies them in this case. I would hold that BP's coverage under the policy[1] is the coverage provided in the policy's "COVERAGE" section, and the coverage is not limited to liabilities Transocean assumed in the drilling contract.

## I. The Drilling Contract

In the drilling contract,[2] BP and Transocean agreed that Transocean would maintain certain specified types of insurance. Part of the agreement was that the insurance requirements would not limit the liability of Transocean's insurer:

**20.1 INSURANCE**

---

[1] Multiple insurance policies are involved. For ease of reference and for the reasons expressed by the Court, I will do as the Court does and reference all the policies by the term "the policy" and all the insurers as "the insurers." The policies were effective from May 1, 2009 to May 1, 2010; the Deepwater Horizon exploded and sank in April 2010.

[2] The drilling contract between BP and Transocean was dated December 9, 1998, and was executed by their predecessors in interest.

> *Without limiting the indemnity obligation or liability of [Transocean] or its insurer*, at all times during the term of this CONTRACT, [Transocean] shall maintain insurance covering the operations to be performed under this CONTRACT as set forth in Exhibit C. (emphasis added)

Exhibit C to the drilling contract, which is referenced in paragraph 20.1, lists nine different types of insurance. One type is Comprehensive General Liability Insurance, including—but notably not limiting coverage to—coverage for Transocean's contractual indemnity:

> [1.]c. Comprehensive General Liability Insurance, including *contractual liability insuring the indemnity agreement as set forth in the Contract* and products-completed operations coverage . . . . (emphasis added)

A separate paragraph in Exhibit C provides that

> 3. [BP], its subsidiaries and affiliated companies . . . shall be named as additional insureds in each of [Transocean's] policies, except Worker's Compensation for liabilities assumed by [Transocean] under the terms of this Contract.

## II. The Policy Language

Despite this latter requirement in Exhibit C, paragraph 3 of the drilling contract, neither the policy nor an endorsement to it named BP as an additional insured. However, the policy provided in its GENERAL CONDITIONS section that additional insureds would be automatically covered "where required" by written contract, and/or subrogation waivers provided "as may be required by contract":

> **3. ADDITIONAL INSURED/WAIVER OF SUBROGATION**
> Underwriters agree where required by written contract, bid or work order, additional insureds are automatically included hereunder, and/or waiver(s) of subrogation are provided as may be required by contract.

The first phrase of the one-sentence paragraph specifies *who* will be covered as additional insureds under the policy: those parties where a written contract, bid, or work order requires the Insured to

2

provide additional insured coverage. The second phrase specifies that waivers of subrogation are provided as a contract requires them to be. Additional insured status and waivers of subrogation are two different matters. Additional insured status provides for defense against and payment of covered claims made against an insured, while waiver of subrogation effectively provides for release of third parties from claims the insurer might have as a result of payments to or on behalf of an insured. And even if the paragraph does not unambiguously distinguish between the two, it is reasonable to construe its language as specifying who will be an additional insured while separately specifying that waivers of subrogation will be provided only as specified in a contract.

In addition to the foregoing ADDITIONAL INSURED/WAIVER OF SUBROGATION provision, the policy's definitions of "Insured" and "Insured Contract" bring BP within the policy's coverage as an Insured:

**IV. DEFINITIONS:**

**INSURED**
> Only the following are included in the definition of the "Insured" under this Policy:
> . . .
> (c) any person or entity to whom the "Insured" is obliged by any oral or written "Insured Contract" . . . to provide insurance such as is afforded by this Policy;
> . . .

**INSURED CONTRACT**
> The words "Insured Contract", whenever used in this Policy, shall mean any written or oral contract or agreement entered into by the "Insured" . . . under which the "Insured" assumes the tort liability of another party . . . . Tort Liability means a liability that would be imposed by law in the absence of any contract or agreement.

Plainly, in the drilling contract Transocean assumed the obligation to provide BP with Comprehensive General Liability Insurance, *including* "contractual liability insuring the indemnity agreement as set forth in the Contract." Just as plainly, Transocean assumed the tort liability of BP to some degree under the drilling contract. So, BP is an insured under the policy's language.

Notably, neither the definition of "Insured" nor "Insured Contract" limit the terms to the scope of the obligation assumed by the "Insured" in a written contract or agreement, such as the language of the original policy would have done when it extended additional insured coverage to insureds of underlying policies. In regard to insureds in underlying policies, the language in Transocean's basic policy provided that coverage would be "not for broader coverage than is available to such person or organization under such underlying policies." This language was amended by an endorsement to read that an insured is "any person or organization, other than the Named Insured, included as an additional insured in the policies listed in the Schedule of Underlying Insurance." Nevertheless, the original policy language demonstrates that Transocean's insurer knew exactly how to restrict coverage of persons or entities who were covered because of a collateral agreement, but chose not to use restrictive language that would apply to persons or entities in situations similar to that of BP. And such language, as was in the original policy, is not unusual in insurance policies. *See, e.g.*, *Urrutia v. Decker*, 992 S.W.2d 440, 441 (Tex. 1999) (policy language provided additional insured coverage "only to the extent and for the limits of liability agreed to under contractual agreement with the named insured"); *United Nat'l Ins. Co. v. Motiva Enters., L.L.C.*, No. Civ. A. H-04-2924, 2006 WL 83482, at *3 (S.D. Tex. Jan. 12, 2006) (construing policy language that states "the extent and scope of coverage under this insurance for the additional insured will be

4

no greater than the extent and scope of indemnification of the additional insured which was agreed to by the named insured").

Which brings us to the policy's INSURING AGREEMENTS section. There, coverage for an "Insured" is specified to be for both liabilities imposed by general law and liabilities assumed by an "Insured" under an "Insured Contract":

## I. INSURING AGREEMENTS

### 1. COVERAGE

In consideration of the payment of the premium set out in Item 7 of the declarations and in reliance upon the proposal for this policy (hereinafter Policy), statements made, and any supplementary information pertaining to the proposal which are all deemed incorporated herein, Underwriters agree, subject to the Insuring Agreements, Conditions, Exclusions, Definitions and Declarations contained in this Policy, to pay on behalf of the "Insured" in respect of their operations anywhere in the World, for "Ultimate Net Loss" by reason of liability:

(a) imposed upon the "Insured" by law
or
(b) assumed by the "Insured" under an "Insured Contract," for damages . . . .

## III. Discussion

As the Court explains, when the scope of coverage for an insured such as BP is in question, the language of the policy itself determines whether a contract other than the policy expands or restricts coverage. ___ S.W.3d at ___ (citing *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660 (Tex. 2008)); *see Urrutia*, 992 S.W.2d at 442 (language external to a policy is incorporated into the policy only "by an explicit reference clearly indicating the parties' intention

to include that contract as part of their agreement"). The Court says that the policy's reference to the drilling contract in two places effectively incorporates the drilling contract's language. In the first, paragraph 3 of the GENERAL CONDITIONS, the insurer agreed that "where required by written contract . . . additional insureds are automatically included hereunder." The Court concludes that the phrase "where required by written contract" is specific enough to limit BP's coverage under the policy to only those liabilities Transocean assumed in the drilling contract. The Court also points to the policy definition of "Insured" which includes "any person or entity to whom the 'Insured' is obliged by an oral or written 'Insured Contract' . . . to provide insurance such as is afforded by this Policy." The Court states that this language requires the Drilling Contract to be consulted in order to interpret those clauses, effectively incorporating a limitation of coverage to the liabilities Transocean agreed to assume. I disagree.

As set out above, the basic policy language demonstrates that the insurer was familiar with and had previously used language limiting coverages it provided in connection with relevant extrinsic agreements when it desired to do so. Further, language in the COVERAGE provision of the policy explicitly "deemed incorporated" documents external to the policy when they were to be considered as part of the policy, but the policy did not "deem incorporated" any part of the drilling contract that would limit BP's coverage as an "Additional Insured" or "Insured."

Further, in *ATOFINA*, an insured was defined as "[a] person or organization for whom you have agreed to provide insurance as is afforded by this policy." 256 S.W.3d at 664. We concluded that this provision provided "direct insurance coverage to ATOFINA." *Id.* at 667. In *ATOFINA* we determined the scope of coverage based on the terms of the policy, not the collateral indemnity

6

agreement. *Id.* at 664. Here, we should do the same. BP is an insured under the unambiguous language of the policy because it is "an entity to whom the 'insured' [Transocean] is obliged by any oral or written 'insured contract' to provide insurance coverage as is provided by this policy," and the drilling contract is an "Insured Contract" because in it Transocean assumes tort liability of BP. And there is no language in either the policy or the drilling contract demonstrating intent to alter BP's status as to that part of the policy covering an "Insured" for "liability [] imposed upon the 'Insured' by law."

In sum, I disagree with the Court's holding for several reasons. First, the policy explicitly covers liability either "imposed upon the 'Insured' by law" or "assumed by the 'Insured' under an 'Insured Contract.'" The policy language providing that parties will be covered as additional insureds "where required by written contract . . . and/or waiver(s) of subrogation are provided as required by contract" arguably and reasonably describes coverage by designating who is an additional insured, and that subrogation waivers are automatically provided as required by contract. But even if such language is construed to limit BP's coverage, the drilling contract's language is not explicitly incorporated into the policy, nor is it "deemed" incorporated as the policy provides for other documents intended to become part of the policy. *See Urrutia*, 992 S.W.2d at 442 ("Texas law has long provided that a separate contract can be incorporated into an insurance policy by an *explicit reference* clearly indicating the parties' intention to include that contract as part of their agreement.") (emphasis added); *Phillips Petroleum Co. v. St. Paul Fire & Marine Ins. Co.*, 113 S.W.3d 37, 44 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (policy language naming Phillips Petroleum as

an additional insured "as required by contract" was not "'an explicit reference clearly indicating the parties' intention' to include the terms and provisions of the M.S.A. as part of the policy").

Second, BP qualifies as an "Insured" under the policy's definition of "Insured" as well as being an "additional insured" under the policy. And as an "Insured" BP is entitled to all coverages the policy affords. Even assuming the policy's "where required by contract" or "as provided by contract" language incorporates the drilling contract's language as to what insurance Transocean must provide for BP, not just who is an additional insured, there still is no language in the policy or the drilling contract *precluding* BP from being insured under the policy for greater coverage than what Transocean agreed to provide. *See* ___ S.W.3d at ___ (recognizing *ATOFINA* made clear that a named insured contractor may provide more coverage than it was required to provide in an underlying contract). In other words, there is simply no agreement in the drilling contract that would preclude Transocean's insurer from providing the coverage that this policy says it provides to an "Insured": coverage for "liability (a) imposed upon [BP] by law or (b) assumed by [Transocean] under [the drilling contract]."

Third, assuming BP's coverage as an "additional insured" is limited to Transocean's liabilities under its indemnity obligation as the Court holds, BP also has the status of an "Insured" as defined in the policy and that status affords it full coverage. And under such circumstances one of the insurance policy's GENERAL CONDITIONS paragraphs resolves the conflict as to different coverages in favor of BP's being covered as an "Insured" without our having to resort to canons of construction to resolve the conflict:

**GENERAL CONDITIONS**

8

**2. CONFLICTING CONDITIONS CLAUSE**
In the event of a conflict between the clauses contained in the General Conditions, Sections I and II, and endorsements, the broadest interpretation will inure to the benefit of the Insured.

## IV. Conclusion

I would hold that BP is covered by the policy and its coverage is not limited to liabilities assumed by Transocean in the drilling contract. I would answer the first certified question "yes" and would not answer the second. Because the Court holds otherwise, I respectfully dissent.

_____
Phil Johnson
Justice


**OPINION DELIVERED:** February 13, 2015

9