such public area for reasons of security or public safety.

**IT IS FURTHER ORDERED** that until a full trial on the merits is held in the above styled action, **Defendant City of St. Louis,** its officers, agents, servants, and employees, and those persons in active concert or participation with them who receive actual notice of this Order are enjoined from directing or allowing any judicial imposition of punishment for any municipal ordinance violation before a determination of an accused person's guilt under an ordinance has been made.

**IT IS FURTHER ORDERED** that, in accordance with the proper exercise of this Court's discretion, no bond or other security shall be required.

Lawrence HORN, Plaintiff,

v.

PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY; Unumprovident Corporation; California Teachers Association Group Salary Protection Insurance Plan, Defendants.

No. C 04–0589 MHP.

United States District Court, N.D. California.

Dec. 13, 2004.

Daniel Mark Feinberg, Lewis, Feinberg, Renaker & Jackson, Oakland, CA, Berne

Reuben, Hersh & Hersh, San Francisco, CA, for Plaintiff.

Russell H. Birner, Gail Ellen Cohen, Barger & Wolen LLP, Stuart Libicki, Schwartz, Steinsapir, Dohrmann & Sommers, Los Angeles, CA, for Defendants.

## OPINION

PATEL, District Judge.

Plaintiff Lawrence Horn filed this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., seeking review of defendants' calculation of his disability benefits. Now before the court are the parties' cross-motions for summary adjudication as to the issue of what standard of review this court should apply in its evaluation of defendants' decision denying plaintiff's request for additional disability benefits. Having considered the arguments presented and for the reasons stated below, the court enters the following memorandum and order.

## BACKGROUND

Plaintiff has participated in an employee welfare benefit plan sponsored by defendant California Teachers Association Group Salary Protection Insurance Plan ("the Plan") since April 1999. Kawasaki Decl., Exh. B at U/A 2–3. Throughout this period, defendants UnumProvident Corp. and its subsidiary, Provident Life & Accident Insurance Co., (collectively "Provident")[1] have provided Plan mem-

1. In his opposition to defendants' motion for summary judgment, plaintiff attempts to draw a distinction between Provident and Unum-Provident for the purpose of determining which entity may properly exercise discretionary authority under the Plan as a "claims fiduciary." Plaintiff argues that of the two entities, only Provident is identified as a claims fiduciary under the terms of the Plan and thus any decision made by UnumProvident is not entitled to the deference that the Plan accords to such a fiduciary. See generally infra at 5–6. However, the court need not address the merits of this contention because plaintiff's argument is contradicted by paragraph 8 of his complaint, which alleges, inter

bers with coverage under a group disability insurance policy issued to the California Teachers Association ("CTA"). *See generally id.,* Exh. A. On September 13, 2000, plaintiff filed with the Plan a claim for short-term disability benefits. *Id.,* Exh. B at U/A 472. Provident approved his claim, and plaintiff began receiving benefits on September 26, 2000. *Id.* at U/A 473–74. At that time, plaintiff had already applied for disability pension benefits available through the California State Teachers Retirement System ("STRS") and was receiving monthly payments from STRS in the amount of $2,308.04. *Id.* at U/A 441. Plaintiff subsequently applied for long-term disability benefits from the Plan and has received such benefits in the amount of $500 per month since September 2002. *Id.* at U/A 1, 116–17.

On February 23, 2003, plaintiff wrote to the Plan and asserted that his long-term disability benefits had been improperly calculated. *Id.* at U/A 79. Provident responded by contacting plaintiff via telephone to discuss how it arrived at the $500 per month figure. *Id.* at U/A 90–92. In addition, Provident provided plaintiff with a "Disability Benefit Calculation" dated January 28, 2003. *Id.* at U/A 87–89. The calculation was derived from section I of the CTA's group disability insurance policy, which provides that the amount of a beneficiary's monthly long-term disability benefit is equal to "50% of Regular Monthly Contract Salary (reduced by Other Income) with a Minimum Benefit of $500 per calender month." *Id.,* Exh. A at CTA–EBT 41. Section III of the policy further defines "Other Income" to include, *inter alia,* "the total amount of income benefits

which [the beneficiary receives] ... under any government plan, including ... the California State Teachers Retirement System." *Id.* at CTA–EBT 51. Relying on sections I and III of the policy, Provident calculated plaintiff's long-term disability benefit by subtracting "Other Income"—that is, plaintiff's STRS disability pension benefit—from an amount equal to fifty percent of plaintiff's monthly contract salary. *Id.,* Exh. B at U/A 89. Based on plaintiffs' salary of $5,221.74 per month and his disability benefits payments of $2,308.04 per month, Provident's calculation yielded a monthly benefit in the amount of $302.83, which Provident increased to $500 per month based on the policy's "Minimum Benefit" provision. *Id.*

On July 28, 2003, Provident notified plaintiff that "[a] determination was made that you are totally disabled in accordance with the provisions of [Provident's] policy and your monthly long term disability benefit [in the amount of $500] will continue." *Id.* at U/A 66. On August 25, 2003, plaintiff's counsel wrote to Provident to demand that it recalculate the amount of plaintiff's disability benefit. *Id.,* Exh. B at U/A 36–39. In his letter, plaintiff's counsel argued that rather than subtracting plaintiff's "Other Income" from his long-term disability benefit *after* applying the fifty percent factor to plaintiff's monthly contract salary, Provident should have subtracted "Other Income" from his salary *before* multiplying by fifty percent. *Id.* at U/A 37. This method would have yielded a long-term disability benefit of $1,456.85 per month. *Id.* The letter also raised similar objections to the methodology that Provident used to

*alia,* that UnumProvident was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21) and that it acted as a claims fiduciary for the Plan. Pl.'s Compl. ¶ 8. Because these allegations constitute judicial admissions, plaintiff is bound by them in these

proceedings. *See Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848, 859–60 (9th Cir.1995). The court therefore need not consider the question of whether UnumProvident's discretionary decisions are entitled to deference by virtue of its parent-subsidiary relationship with Provident.

calculate plaintiff's short-term disability benefits during the period from September 2000 to September 2002. *Id.* at U/A 38.[2]

Provident set forth its response to this request in a letter dated September 24, 2003. *Id.* at U/A 29–30. The response summarized the contents of the aforementioned Disability Benefit Calculation and concluded that Provident's calculation of plaintiff's short- and long-term disability benefits "are in accordance with the policy wording." *Id.* at U/A 30. The letter closed by requesting that plaintiff submit for further review any additional information that he might have to support his position. *Id.*

On November 21, 2003, plaintiff's counsel again wrote to Provident and requested that it recalculate plaintiff's benefits. *Id.* at U/A 5–6. Plaintiff's request included an opinion letter prepared by Geoffrey Nunberg, a Stanford University linguist, which supported plaintiff's interpretation of the "Other Income" provision of Provident's policy. *Id.* at U/A 7–14. Provident acknowledged receipt of the November 21 letter on December 2, 2003. Feinberg Decl., Exh. 12 at H0116. On January 21, 2004, Provident again contacted plaintiff's counsel by mail and informed him that its "evaluation of the information that you submitted for Mr. Horn's disability claim is continuing." *Id.* at H0117. On February 11, 2004, plaintiff filed this action seeking review of Provident's calculation of his disability benefits. It was not until after this action was filed, on April 20, 2004, that Provident sent plaintiff a letter denying his November 2003 request for reconsideration and reaffirming its original interpreta-

tion of the policy's "Other Income" provision. *Id.*, Exh. 15 at H0118–19.

Plaintiff's complaint seeks a declaration that Provident incorrectly interpreted the "Other Income" provision of the CTA's group disability policy, as well as disgorgement of all profits from the improper interpretation of the Plan and unspecified equitable relief under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). On October 12, 2004, the parties filed cross-motions for summary adjudication on the issue of the standard of review that this court should apply in evaluating Provident's calculation. While plaintiff argues that Provident's interpretation of the "Other Income" provision of its policy is subject to de novo review under ERISA, defendants contend that the court must review Provident's decision under an abuse of discretion standard. The court considers the parties' arguments below.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and

---

**2.** Section I of the Provident's policy provides that beneficiaries are entitled to short-term disability benefits equal to "75% of the Regular Daily Contract Salary (reduced by Other Income) for each Regular Day Of Required Attendance." Kawasaki Decl., Exh. A at

CTA–EBT 40. As with longterm benefits, Provident calculated the amount of short-term disability benefits that plaintiff was entitled to receive by first applying the 75% factor to plaintiff's contract salary and then subtracting "Other Income" from that amount.

affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the non-moving party's case." *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. *Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co.,* 26 F.3d 957, 960 (9th Cir.1994). The court may not make credibility determinations, *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505, and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). Nonetheless, even if summary adjudication of an entire claim is not warranted, Federal Rule of Civil Procedure 56(d) allows a court to grant partial summary judgment, thereby reducing the number of facts at issue in a trial. Fed. R. Civ. Pro. 56(d); *State Farm Fire & Cas. Co. v. Geary,* 699 F.Supp. 756, 759 (N.D.Cal.1987) (Patel, J.).

II. *Judicial Review of Benefits Determinations Under ERISA*

■ The disability insurance plan at issue in this action is a defined benefit plan subject to the provisions of ERISA. A denial of ERISA benefits is reviewed de novo unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Under *Firestone,* the default presumption is that the administrator has no discretion and must show that the plan confers discretionary authority. *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1089 (9th Cir.) (en banc), *cert. denied,* 528 U.S. 964, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999). If the benefit plan confers discretion on the administrator, a reviewing court must apply an abuse of discretion standard. *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 942 (9th Cir.1999); *McClure v. Life Ins. Co. of N. Am.,* 84 F.3d 1129, 1132 (9th Cir.1996) (per curiam).

■ Under the abuse of discretion standard, the court's review is limited to the administrative record, and the decision of an administrator will not be disturbed unless the court determines that the decision was arbitrary or capricious. *McKenzie v. General Tel. Co. of Cal.,* 41 F.3d 1310, 1316 (9th Cir.1994), *cert. denied,* 514 U.S. 1066, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995); *Clark v. Washington Teamsters Welfare Trust,* 8 F.3d 1429, 1431 (9th Cir.1993). "The touchstone of 'arbitrary and capricious' conduct is unreasonableness." *Clark,* 8 F.3d at 1432. In contrast, under the de novo standard of review, the normal summary judgment standard applies, and the district court may grant summary judgment only if there are no genuine issues of material fact in dispute. *Tremain v. Bell Indus., Inc.,* 196 F.3d 970, 978 (9th Cir.1999).

*DISCUSSION*

The question presented in the parties' cross-motions for summary judgment is whether the court should review Provident's calculation of plaintiff's disability benefits de novo or under an abuse of discretion standard. In addressing this issue, the court is called upon to determine

the enforceability of the "discretionary clause" in Provident's policy, which states:

"It is the intent of CTA that the Claims Fiduciary [Provident] shall have the sole and exclusive discretion and power to grant and/or deny any and all claims for benefits and construe any and all issues relating to eligibility for benefits. All findings, decisions, and/or determinations of any type made by the Claims Fiduciary shall not be disturbed unless the Claims Fiduciary has acted in an arbitrary and/or capricious manner. Subject to the requirements of law, the Claims Fiduciary shall be the sole judge of the standard of proof required in any claims for benefits and/or in any question of eligibility for benefits. All decisions of the Claims Fiduciary shall be final and binding on all parties. Whenever a decision on a claim is involved, the Claims Fiduciary is given broad discretionary powers, and the Claims Fiduciary shall exercise said powers in a uniform and non-discriminatory manner, in accordance with the Plan's terms."

Kawasaki Decl., Exh. A at CTA–EBT 55. The clause unambiguously grants Provident "broad discretionary powers" to determine the amount of benefits due to a particular beneficiary. *Id.* Thus, if the clause is enforceable, the court must apply an abuse of discretion standard in reviewing Provident's benefits calculation. *Bendixen,* 185 F.3d at 942; *McClure,* 84 F.3d at 1132.

Seeking to avoid this result, plaintiff contests the validity and enforceability of the discretion-conferring language in Provident's policy on a number of grounds. Plaintiff first contends that the clause is void under California Insurance Code § 10291.5(b)(1) as that statute has been interpreted by the California Insurance Commissioner. Alternatively, plaintiff argues that even if the clause is valid under

California law, defendants are not entitled to its benefit because Provident failed to respond to plaintiff's request for review of an "adverse benefits determination" within the time limits set forth in Department of Labor regulations and in the terms of the Plan. *See* 29 C.F.R. § 2560.503–1(h)–(j); Kawasaki Decl., Exh. A at CTA–EBT at 55. Finally, plaintiff contends that Provident's determination of the amount of his monthly disability benefit was influenced by a conflict of interest, thereby requiring de novo review under the standard set forth in *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. The court addresses each of these arguments in detail below.

## I. Validity of Discretionary Clause under California Insurance Code § 10291.5(b)(1)

■ On February 26, 2004, the California Insurance Commissioner issued an opinion letter stating that it had concluded that "discretionary clauses" which "purport to confer on the insurer discretionary authority to determine eligibility for benefits or to interpret the terms or provisions of the contract" render the insurance contracts that include such clauses "fraudulent or unsound" and therefore unlawful under California Insurance Code § 10291.5(b)(1). Defs.' Req. for Judicial Notice, Exh. A at 1. On the following day, the Insurance Commissioner issued a notice pursuant to its authority under California Insurance Code § 10291.5(f) that it intended to withdraw approval of a range of disability insurance policies that included such language. *Id.,* Exh. B.

Although the Provident policy at issue here was not among those identified by the notice, plaintiff contends that the court should look to the Insurance Commissioner's opinion letter as persuasive authority and hold that the "discretionary clause" in Provident's policy is void under California

law. In *Firestone v. Acuson Corp. Long Term Disability Plan,* 326 F.Supp.2d 1040 (N.D.Cal.2004) (Patel, C.J.), this court considered and rejected a similar argument raised by an insured challenging a discretionary clause in a group disability insurance policy. *Id.* at 1050–51. The court held that when the terms of an insurance policy have been approved by the California Insurance Commissioner, section 10291.5 of the Insurance Code does not provide the insured seeking reformation of an objectionable policy term with a private right of action against the insurer. *Id.* (citing *Peterson v. American Life & Health Ins. Co.,* 48 F.3d 404, 410–11 (9th Cir.1995)). Rather, the insured's "only potential remedy is a writ of mandamus compelling the Commissioner to withdraw her approval." *Id.* at 1051.

However, plaintiff points out that the instant case is distinguishable from *Firestone* because there is no evidence that the discretion-conferring language in Provident's policy has ever been submitted to the Insurance Commissioner for approval. Indeed, defendants concede that they have failed to locate any official Department of Insurance approval of the rider that amended the policy to include the discretion-conferring language that plaintiff now alleges to be unenforceable. Defs.' Mem. of P. & A. at 25 n. 42. Although defendants attempt to explain away their failure to meet their burden of production on this issue, citing gaps in records kept by the Department of Insurance as well as in their own files, the court agrees that there is no basis in the record for concluding that the discretionary clause in Provident's policy has been approved by the Insurance Commission.

In addition to depriving the discretionary clause of the presumption of validity associated with Insurance Commissioner's approval, Provident's apparent failure to seek and obtain approval of the clause also violates section 10270.9 of the Insurance Code, which requires the Commissioner to approve of the terms of any group disability policies issued or delivered in California. Cal. Ins.Code § 10270.9.[3] Plaintiff contends that such a failure to comply with section 10270.9 renders the discretionary clause of Provident's policy void and unenforceable under California law. The court is not aware of any reported California cases addressing whether an insurer's failure to obtain preissuance approval of a policy provision limits the insurer's ability to enforce the unapproved provision. However, the Texas Supreme Court confronted this issue in *Urrutia v. Decker,* 992 S.W.2d 440 (Tex.), *cert. denied,* 528 U.S. 1021, 120 S.Ct. 530, 145 L.Ed.2d 411 (1999). In that case, an insurer had failed to comply with a provision of the Texas Insurance Code requiring that insurers either use an approved policy form or submit their policies to the State Board of Insurance for approval. *Id.* at 443 (citing Tex. Ins.Code art. 5.06(2)). The court held that such a failure to submit the disputed policy provision to the Board of Insurance rendered the policy voidable at the option of the insured. *Id.* at 443. However, having established that the policy is voidable, the insured must elect either to rescind the policy in its entirety or to accept the policy's benefits under the agreed-upon terms. *Id.; see also* 1 John Appleman & Jean Appleman, *Insurance Law & Practice* § 173, at 535 (rev.vol.1981) (observing that an insured becomes chargeable with a policy's terms by paying premiums or bringing suit on the policy); 16 *Williston*

---

**3.** California Insurance Code § 10270.5(a) defines "group disability insurance" to include, *inter alia,* any policy obtained by an associa-

tion "formed and continuously maintained in good faith for purposes other than that of obtaining insurance." *Id.* § 10270.5(a)(3).

*on Contracts* § 49:12 (4th ed.1995) (noting that an insured who chooses to enforce an insurance contract "may not do so piecemeal, but is bound by the policy, and is subject to all of its terms"). Thus, the Texas Supreme Court held that because the plaintiff had accepted the insurance benefits extended to him under the defendant's insurance policy, he was bound by all of the policy's terms, including those that had not been approved by the Board of Insurance. *Id.* at 444.

*Urrutia* distinguished the case before the court from the situation where a policy term conflicts with a standard policy provision that has been approved by the Board. *Id.* at 443. Under such circumstances, the court noted that the provision would be void as contrary to public policy and could be not be enforced against the insured. *Id.* Again, this issue appears to be a question of first impression in California. In light of this fact, *Urrutia* offers a soundly reasoned approach that is consistent with the views that a number of treatises have expressed on the subject. *See* 1 Appleman & Appleman, *Insurance Law & Practice* § 173, at 535; 16 *Williston on Contracts* § 49:12. In contrast, plaintiff argues, without citing any precedent to support his position, that all policy provisions issued in violation of section 10270.9 are void. Such a rule would have the undesirable effect of invalidating an insurance policy provision based solely on the insurer's failure to comply with the procedural formalities of the Insurance Code, which are ordinarily enforced in the first instance by the Department of Insurance. The Texas Supreme Court's rule avoids this result, but at the same time, it preserves the court's role in enforcing the substantive protections of the Insurance Code where the insurer has failed to comply with the procedural requirements that are intended to ensure that the Department of Insurance has the opportunity to enforce those protections. Thus, because there is no evidence that the Insurance Commissioner has approved the discretionary clause of Provident's policy, the court concludes that it must undertake an independent inquiry into whether that clause is void as contrary to public policy.

The relevant public policies in the instant case are set forth in Insurance Code § 10291.5, which seeks to "[p]revent, with respect to disability insurance, fraud, unfair trade practices, and insurance economically unsound to the insured" and to "[a]ssure that the language of all insurance policies can be readily understood and interpreted." Cal Ins.Code § 10291.5(a). To give effect to this broad statement of purpose, section 10291.5(b) set forth standards to which policies issued or delivered in the state of California must conform, only two of which apply to group disability insurance policies: paragraph (1), which prohibits including terms in an insurance contract that are "unintelligible, uncertain, ambiguous, or abstruse, or likely to mislead a person to whom the policy is offered, delivered or issued"; and paragraph (13), which requires the Insurance Commissioner to deny approval to any policy provision that "fails to conform in any respect" with California law. *Id.* §§ 10291.5(b)(1),(13), 10270.95.

The Insurance Commissioner's opinion letter on which plaintiff now relies bases its withdrawal of approval of the discretionary clauses in certain insurance policies on both paragraphs (1) and (13) of section 10291.5(b). Defs.' Req. for Judicial Notice, Exh. A at 1–2. As to the former, the Commissioner concluded that "because [a] discretionary clause effectively negates the operative terms of the contract, the contract becomes unintelligible, uncertain, ambiguous, abstruse and likely to mislead the insured, in violation of [California Insurance Code] § 10291.5(b)(1)." *Id.* With

respect to section 10291.5(b)(13), the Commissioner concluded that discretionary clauses may deprive the insured of "the protections of California insurance law," including the covenant of good faith and fair dealing and the rule that ambiguities in an insurance policy are resolved in favor of the insured. *Id.* at 2.

Citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), plaintiff devotes considerable space in his briefs to his attempt to convince the court that it should afford "respect" to the views expressed in the Insurance Commissioner's opinion letter. *See Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (observing that informal agency interpretations are entitled to "respect" to the extent that those interpretations have the "power to persuade") (quoting *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161). However, assuming that *Skidmore* deference is appropriate under the present circumstances, the Commissioner's letter is so lacking in "the power to persuade" that the court need only accord it the respect that it is due—that is to say, very little. As noted above, the Commissioner cites paragraph (1) of section 10291.5(b) as one basis for invalidating discretionary clauses in disability insurance policies. In essence, paragraph (1) requires the terms of disability policies to be clear and not misleading. Cal. Ins. Code § 10291.5(b)(1). It says nothing about the substantive allocation of authority between insurer and insured, which one would ordinarily think would be a prerequisite to issuing a blanket condemnation of all discretionary clauses regardless of the clarity of their language. In fact, the discretionary clause of Provident's policy is quite clear in stating, *inter alia,* that Provident "shall be the sole judge of any claims for benefits," that its decision "shall be final and bending on all parties," and that it has "broad discretionary powers" in

making such decisions. Kawasaki Decl., Exh. A at CTA–EBT 55. Moreover, while the Insurance Commissioner's letter notes that a "discretionary clause may cause California insureds to believe the insurer's decision to be final and to accept an unjustified denial of benefits," Defs.' Req. for Judicial Notice, Exh. A at 2, the discretion-conferring language in Provident's policy appears in a paragraph that begins with the sentence: "If the Member is not satisfied or does not agree with the reasons for denial of the claim, the Member may appeal the decision to the Claims Fiduciary . . . ." Kawasaki Decl., Exh. A at CTA–EBT 55. Although it is perhaps more realistic to assume that a reasonable policyholder would be rationally ignorant of this entire discussion, it certainly makes no sense to assume that a paragraph in an insurance policy that informs insureds of their right to appeal adverse benefits determinations would mislead them into believing that such determinations were final. Simply put, there is nothing unintelligible, ambiguous, or misleading about the discretionary clause in Provident's policy.

The Insurance Commission's second argument, which relies on section 10291.5(b)(13), is no more persuasive than the first. The Commissioner identifies two "protections of California insurance law" that discretionary clauses deny to insureds: the covenant of good faith and fair dealing and the doctrine under which ambiguous terms in insurance contracts are construed in favor of the insured. With respect to the first of these protections, it is axiomatic that California law recognizes "an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 684, 254 Cal. Rptr. 211, 765 P.2d 373 (1988) (quoting

*Comunale v. Traders & Gen., Ins. Co.* 50 Cal.2d 654, 658, 328 P.2d 198 (1958)). It also certainly true that when an insurer implicitly reserves discretion to determine whether to pay a claim made against its policy, the implied covenant imposes limits on how such discretion may be lawfully exercised. *See generally Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 818–21, 169 Cal.Rptr. 691, 620 P.2d 141 (1979). However, it is a general principle of California law, made applicable to contracts of insurance by *New Hampshire Insurance Co. v. Ridout Roofing Co.,* 68 Cal.App.4th 495, 80 Cal.Rptr.2d 286 (1998), that the implied covenant of good faith "cannot be utilized to limit or restrict an express grant of discretion in a contract to one of the parties thereto." *Id.* at 504–05, 80 Cal.Rptr.2d 286; *see also Carma Developers, Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal.4th 342, 374, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992) ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms."). Thus, the implied convent of good faith and fair dealing would generally have no effect on the validity of contractual language conferring discretion on one of the parties to the agreement.

It is true that in *Third Story Music, Inc. v. Waits,* 41 Cal.App.4th 798, 48 Cal. Rptr.2d 747 (1995), the court of appeal recognized an exception to this general rule might apply "in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement." *Id.* at 808, 48 Cal. Rptr.2d 747. Plaintiff suggests that this exception is relevant here because "the discretionary clause makes those payments contingent on the unfettered discretion of the insured, thereby nullifying the promise to pay and rendering the contract illusory." Pl.'s Opp. to Mot. to Dismiss at 16. However, there is no evidence here that Provident has "reserve[d] an unqualified right to perform or withdraw at whim," as would be required to find that the policy is an illusory promise. *See Frankel v. Board of Dental Exam'rs,* 46 Cal.App. 4th 534, 548, 54 Cal.Rptr.2d 128 (1996). Indeed, the policy requires that Provident exercise its discretion to grant or deny benefits in "a uniform and non-discriminatory manner, in accordance with the Plan's terms" and to refrain from interpreting such terms in an arbitrary or capricious manner. Kawasaki Decl., Exh. A at CTA–EBT 55. Such determinations are also subject to judicial review under ERISA. *See* 29 U.S.C. § 1132(a)(1)(B). Furthermore, Provident remains subject to the full panoply of requirements that ERISA imposes on plan fiduciaries. *See, e.g., id.* § 1104(a)(1) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ."). Such an obligation to make benefits determinations in a uniform, nonarbitrary fashion and in the interest of the beneficiaries can hardly be considered "a right to perform or withdraw at whim." *Cf. Frankel,* 46 Cal.App.4th at 548, 54 Cal. Rptr.2d 128. The court therefore concludes that Provident's promise to perform is sufficient consideration to render the insurance policy a non-illusory and enforceable contract under California law.

In any event, *Third Story Music* and the cases discussed therein were largely concerned with the circumstances under which an obligation to perform a contractual duty in good faith may be implied in order to *enforce* a contract that would otherwise be unenforceable for want of consideration. *See id.* at 805–06, 48 Cal. Rptr.2d 747 (quoting 2 Corbin, *Contracts*

§ 5.28, at 149–150 (rev. ed. 1995)) ("The tendency of the law is to avoid the finding that no contract arose due to an illusory promise when it appears that the parties intended a contract. An implied obligation to use good faith is enough to avoid the finding of an illusory promise.") (original alterations omitted). Here, the court need not imply a duty of good faith to avoid finding an illusory promise because Provident's express obligations under its policy are more than sufficient to support the formation of an enforceable contract. Because a contrary conclusion would neither be persuasive nor reasonable, the court rejects plaintiff's attempt to bind the court to the Insurance Commissioner's resolution of this issue.

The Commissioner's reliance on the axiom that insurance contracts are construed in favor of the insured is similarly misplaced. The Commissioner appears to argue that a reasonable policyholder would not expect Provident to have discretion in granting or denying disability benefits. However, while it is true that *ambiguous* policy terms must be construed based on the reasonable expectations of the insured, see *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1265, 10 Cal.Rptr.2d 538, 833

P.2d 545 (1992), nothing in the Insurance Commissioner's letter nor plaintiff's arguments before this court suggests that the terms of Provident's contract are ambiguous. Thus, the court finds the Insurance Commissioner's (and therefore plaintiff's) reliance on an interpretative rule that applies only to ambiguous contract terms to be misplaced.

In summary, the court holds that Provident has failed to meet its burden of producing evidence to show that the discretionary clause of its group disability insurance policy has been approved by the California Insurance Commissioner pursuant to the requirement of Insurance Code § 10270.9. Although this renders the policy voidable at the option of the insured, plaintiff has elected to accept the benefits available under the policy and bring this action to enforce his rights thereunder. Thus, plaintiff must show that the discretionary clause is void on public policy grounds in order to avoid its enforcement. Neither plaintiff nor the Insurance Commissioner's letter on which he relies meets this burden, regardless of the degree of deference that the court extends to the letter.[4] Accordingly, the

---

4. In reaching this conclusion, the court recognizes that, as this court recently stated in *Fenberg v. Cowden Automotive Long Term Disability Plan*, No. C 03–03898, 2004 WL 2496174 (Nov. 2, 2004) (Illston, J.), "the state of California has an interest in protecting its citizens, such as plaintiff, through the California Insurance Code." *Id.* at *2. Nor does the court dispute that as the head of the agency charged with implementing these protections, the Insurance Commissioner's opinion is relevant to its interpretation of the Insurance Code. *See id.* (recognizing the Commissioner's February 26, 2004 opinion letter as persuasive authority). Nonetheless, a court need not defer to a legal conclusion of an agency that is clearly erroneous. Under *Skidmore*, a court reviewing an administrative agency's informal interpretation of a statute is obliged to meet the agency halfway and treat well-

reasoned opinions with a certain degree of "respect." *Christensen*, 529 U.S. at 587, 120 S.Ct. 1655. However, administrative agencies are, like the courts, bound by the unambiguous terms of a statute, as well as the general principles of California decisional law. Cf. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.") Where an agency makes an argument that has no reasoned basis in the governing law that it purports to interpret, its opinion is due no respect whatsoever. For these reasons, the court respectfully disagrees with the conclusion of the *Fenberg* court, and not being by

court holds that the discretionary clause in Provident's policy is valid and enforceable under California law.[5]

## II. Timeliness of Provident's Denial of Plaintiff's Claim for Additional Benefits

■ Alternatively, plaintiff asserts that even if the policy's discretionary clause is valid under California law, Provident failed to comply with the time limits for reviewing benefits requests set forth in Department of Labor regulations and in the terms of the Plan. Section 2560.503–1 of Title 29 of the Code of Federal Regulations sets forth minimum procedural requirements that ERISA plan administrators must implement in reviewing an "adverse benefit determination." 29 C.F.R. § 2560.503–1(h)–(j). Among these requirements is a forty-five day time limit imposed on the review of disability benefits claims. 29 C.F.R. § 2560.503–1(i)(3)(i). In addition, Provident's policy contains a sixty-day time limit for processing a plan member's appeal that was in effect prior to January 1, 2002. Kawasaki Decl., Exh. A at CTA–EBT 55; see also 65 Fed.Reg. 70,265, 70,249 & n. 13 (Nov. 21, 2000).[6]

In *Jebian v. Hewlett–Packard Co. Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098 (9th Cir.2003), petition for cert. filed, 72 U.S.L.W. 3553 (2004), the Ninth Circuit considered the relationship between the sixty-day time limit set forth in the pre–2002 regulations and the standard of review that applies in an action seeking judicial review of an adverse benefit determination. The court held that "where, according to plan and regulatory language, a claim is 'deemed denied' on review after the expiration of a given time period, there is no opportunity for the exercise of discretion and the denial is usually to be reviewed de novo." *Id.* at 1103 (alterations in original omitted). In so holding, the court reasoned that deference to plan administrators' decisions could not extend beyond "the exercise of the discretion vested in them by the instrument under which they act." *Id.* at 1104 (quoting *Firestone*, 489 U.S. at 111, 109 S.Ct. 948) (original emphasis omitted). Accordingly, the court concluded that "[d]ecisions made outside the boundaries of conferred discretion are not exercises of discretion, the substance of the decisions notwithstanding," and are therefore subject to de novo review under ERISA. *Id.*

bound that court's decision, it reaches a different result here.

5. The court further notes that even if this clause had been approved by the Insurance Commissioner and the policy or clause in the policy was one for which the Commissioner had determined to withdraw approval, section 10291.5(f) provides the procedure for doing so and that subsection specifically provides that the withdrawal is "effective[ ] prospectively and *not retroactively.*" Cal. Ins.Code § 10291.5(f) (emphasis added). This gives further force to the court's conclusion that voiding the policy or the clause in the policy at issue here would be improper.

6. The forty-five-day time limit set forth in 29 C.F.R. § 2560.503–1(i)(3)(i) applies to claims

filed on or after January 1, 2002, 29 C.F.R. § 2560.503–1(o)(1), and thus would appear to govern plaintiff's claim for long-term disability benefits. *See also Jebian v. Hewlett–Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1103 n. 5 (9th Cir.2003) (determining time limit based on filing date of claim for long-term disability benefits). On the other hand, if plaintiff's request for long-term benefits relates back to his September 2000 claim for short-term disability benefits, the sixty-day time limit set forth in the pre–2002 regulation applies. *See* 65 Fed.Reg. at 70, 249 & n. 13 (revising 29 C.F.R. § 2560.503–1(h)–(i)). In any event, the difference between the forty-five- and sixty-day time limits is immaterial in this action.

The Ninth Circuit also relied on the language of the Department of Labor's pre–2002 regulations stating that a claim that has not been reviewed within sixty days of the date of the beneficiary's request for review "shall be deemed to have been denied on review." *See id.* at 1103–04 (citing 29 C.F.R. § 2560.503–1(h)(4), *amended by* 65 Fed.Reg. 70,265 (Nov. 21, 2000)). Although the Department's revised regulations do not include this "deemed denied" language, *see* 29 C.F.R. § 2560.503–1(h), plaintiff argues that *Jebian's* reasoning applies in the instant case because his September 2003 request for review relates back to his September 2001 claim for short-term disability benefits.[7]

The court assumes for the purposes of deciding this motion that plaintiff is correct in his assertion that the pre–2002 regulations apply. However, even granting plaintiff this indulgence, nothing in the record would permit a finding that plaintiff's claim was "deemed denied" upon expiration of the regulatory time limit. It is undisputed that Provident issued final determinations on plaintiff's eligibility for short- and long-term disability benefits on September 26, 2000 and July 28, 2003, respectively. Kawasaki Decl., Exh. B at U/A 66, 473–74. Furthermore, plaintiff correctly characterizes his February 2003 letter as an "informal inquir[y]." Pl.'s Opp'n at 4. Although the letter expresses plaintiff's dissatisfaction with the amount of his long-term disability benefits payments, it is in neither form nor substance an "appeal" of plaintiff's benefits claims. Under the terms of the policy, an administrative appeal must be in writing and "must set out reasons for the appeal and the Member's dissatisfaction or disagreement." Kawasaki Decl., Exh. A at CTA–

EBT 55. In contrast, plaintiff's February 2003 letter contains little more than a conclusory (albeit passionate) assertion that he was entitled to "FULL benefits." Kawasaki Decl., Exh. B at U/A 79 (emphasis in original). Thus, because the letter does not even attempt to present a reasoned argument in support of plaintiff's claim, it cannot be properly characterized as an "appeal" under the terms of the policy.

In fact, Provident failed to make a final determination of plaintiff's eligibility for long-term disability benefits until July 28, 2003. *Id.* at U/A 66. Although at this time Provident determined that plaintiff was entitled to receive long-term benefits, plaintiff requested through counsel that Provident review its application of the policy's "Other Income" provision on August 23, 2003. *Id.* at U/A 36–39. The August 2003 letter included detailed arguments challenging Provident's calculation of plaintiff's short- and long-term disability benefits, as required by the appeals provision of the policy. *Id.* Moreover, Provident responded to this request on September 24, 2003—within the sixty-day (or if the current regulations apply, forty-five-day) time limit set forth in section 2560.503–1. *Id.* at U/A 29–30. Thus, it is clear that Provident's response to plaintiff's August 2003 letter complied with the limit limits set forth in section 2560.503–1(i)(3)(i) as well as those in the pre–2002 version of section 2560.503–1(h).

Nonetheless, plaintiff asserts that these limits should also apply to Provident's response to his November 21, 2003 letter. Implicit in this argument is the assumption that plaintiff's November 21 letter is an appeal of an "adverse benefit determina-

7. In contrast to *Jebian,* the policy at issue here does not include the "deemed denied" language that appears in the pre–2002 regulations. *See* 349 F.3d at 1103. Thus, the Plan language cannot provide an independent basis for concluding that plaintiff's claim was "deemed denied" upon expiration of the applicable time limit.

tion" with the meaning of 29 C.F.R. § 2560.503–1(h). Of course, because a beneficiary is entitled to only one such appeal, this would require the court to conclude that plaintiff's August 2003 request for review was not an appeal made pursuant to section 2560.503–1(h) and the terms of the Plan. In other words, to accept plaintiff's argument, the court must conclude that plaintiff's August 2003 letter was something other than an appeal of Provident's determination of his disability benefits—perhaps, as plaintiff appears to suggest, an initial "claim for benefits" within the scope of 29 C.F.R. § 2560.503–1(e).

The court finds this argument to be without merit. Section 2560.503–1(e) defines a claim for benefits as "a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims." 29 C.F.R. § 2560.503–1(e). Under the relevant terms of Provident's policy, a claim for long-term disability benefits must be made before the beneficiary's eligibility for short-term disability benefits expires (i.e., within two years of becoming disabled) or "as soon as possible." Kawasaki Decl., Exh. A at CTA–EBT 50. The policy also sets forth specific steps that a beneficiary must take to apply for benefits, such as providing written "proof of loss" within ninety days after the expiration of the short-term disability benefit period (or "as soon as possible") and establishing that he or she has applied for all benefits and cash payments that are considered "Other In-

come" for the purpose of calculating disability benefits. *Id.* There is no dispute that plaintiff had completed these steps and had established his eligibility to receive longterm disability benefits prior to submitting his August 2003 request to recalculate his benefits amount. Moreover, although plaintiff's eligibility for short-term disability benefits expired in September 2002, nothing in the record suggests that his August 2003 request was submitted before the December 2002 deadline to apply for long-term benefits or "as soon as possible" thereafter, In light of these undisputed facts, the August 2003 request can only be reasonably viewed as an appeal of Provident's determination of the amount of benefits that plaintiff was entitled to receive. Accordingly, the court holds that plaintiff appealed Provident's adverse benefit determination on August 23, 2003 and that plaintiff's November 2003 letter was a request for reconsideration of Provident's decision denying that initial appeal.[8]

Having reached this conclusion, it necessarily follows that plaintiff's November 2003 request for reconsideration could not have been "deemed denied" under *Jebian.* Neither the terms of the Plan nor the Department of Labor regulations on which plaintiff relies require Provident to reopen a request for review that has been denied, nor do they require Provident to render a decision on such a request within a particular time period. The fact that Provident voluntarily undertook to review such a re-

---

8. Admittedly, Provident's April 28, 2004 "follow up" to its denial of plaintiff's November 2003 request for reconsideration indicated that Provident was uncertain as to whether plaintiff's "recent request for review was intended [as] an appeal," Feinberg Decl., Exh. 16 at H0120, suggesting that Provident recognized some ambiguity with respect to the procedural posture of plaintiff's request. Ultimately, however, it is the court and not the

parties that must determine the legal implications of the parties' correspondence. Consequently, the court finds Provident's post hoc (and inconclusive) characterization of the November 2003 request to be of little value in determining whether that request was intended to be an appeal of an adverse benefit determination subject to the limit set forth in 29 C.F.R. § 2560.503–1.

quest does not imply that defendants forfeit the deference due to Provident's initial determination, which concededly complied with the time limit set forth in 29 C.F.R. § 2560.503–1. Indeed, as the *Jebian* court makes clear, the rationale behind requiring de novo review of a claim that has been "deemed denied" is that there is no valid exercise of discretion to which a court may defer. *See* 349 F.3d at 1104. That rationale is simply inapposite in the instant case because Provident's denial of plaintiff's August 2003 request for review constituted a valid exercise of its discretion to interpret the Plan's term. Thus, even through Provident did not issue a final decision denying plaintiff's November 2003 request until April 20, 2004—almost five months after the request was made—the court concludes that *Jebian* does not apply. The court therefore rejects plaintiff's contention that his disability benefits claim is entitled to de novo review because it was "deemed denied" by Provident.

## III. *Conflict of Interest*

■ Finally, plaintiff argues that the "discretionary clause" in Provident's policy does not apply in this action because Provident's denial of his request for additional benefits was influenced by a conflict of interest. ERISA provides that a plan administrator must "afford a reasonable opportunity ... for a full and fair review" of adverse decisions. 29 U.S.C. § 1133(1)-(2); *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 879 (9th Cir.2004). Thus, even where a provision in a benefit plan grants the administrator discretionary authority to implement the plan, the court must weigh the existence of any conflict of interest that may affect the administrator in considering whether that discretion has been abused. *Firestone*, 489 U.S. at 115, 109 S.Ct. 948.

Moreover, if such a conflict exists, the court must further distinguish between the mere appearance of a conflict of interest, which arises by virtue of the administrator's "economic stake in the benefit decision which it makes," and a conflict that actually "caused a breach of the administrator's fiduciary duty to the beneficiary." *Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1322–23 (9th Cir.1995); *see also Nord v. Black & Decker Disability Plan*, 356 F.3d 1008, 1010 (9th Cir.), *cert. denied*, —— U.S. ——, 125 S.Ct. 62, 160 L.Ed.2d 20 (2004). In the case of the former—an "apparent conflict of interest"—the court's review is still for abuse of discretion, although the level of scrutiny is "less deferential" than it would otherwise be. *Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir.1999) (quoting *Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 798 (9th Cir.1997)); *see also Barnett v. Kaiser Found. Health Plan, Inc.*, 32 F.3d 413, 416 (9th Cir.1994) (refusing to apply heightened review absent proof of a "serious" conflict of interest). On the other hand, de novo review may be appropriate if the affected beneficiary is able to produce evidence "beyond the mere fact of apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations." *Atwood*, 45 F.3d at 1323. If the beneficiary meets his or her burden of production on this issue, the plan administrator bears the burden of proving that the conflict of interest did not affect the decision to deny benefits. *Id.* In the event that the plan administrator cannot meet this burden, the court must review the administrator's decision de novo, "without deference to the administrator's tainted exercise of discretion." *Id.*

The Ninth Circuit has never explicitly defined the contours of what constitutes a breach of fiduciary duty in this context.

However, when evaluating the possibility of such a breach, courts in this circuit have appeared to focus on procedural irregularities or structural inconsistencies within the plan administrator's decisionmaking process rather than on the substantive accuracy of the administrator's decision. *See, e.g., Nord*, 356 F.3d at 1010 (observing that " 'material, probative evidence' [of a breach of fiduciary duty] may consist of inconsistencies in the plan administrator's reasons, insufficiency of those reasons, or procedural irregularities in the processing of the beneficiaries' claims") (internal quotation marks and citation omitted); *see also Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 (9th Cir.1999) (holding that district court did not err in concluding that failure to provide notice of claim denial, together with an unfair review procedure and "inadequate dialogue" regarding the beneficiary's claim, supported the application of a de novo standard of review). The Ninth Circuit has also observed that a plan administrator's failure to adopt consistent reasoning in support of its decision weighs against deferential review of that decision. *See, e.g., Tremain*, 196 F.3d at 977; *Lang*, 125 F.3d at 799.

There is an apparent conflict of interest in the instant action because Provident is both an administrator and a funding source for the Plan. *See Nord*, 356 F.3d at 1010. In seeking to meet its burden of producing evidence tending to show that this apparent conflict ripened into an actual conflict of interest that affected Provident's administration of the Plan, plaintiff cites several procedural deficiencies related to Provident's denial of his disability benefits claim. However, to the extent that these purported deficiencies relate to the alleged untimeliness of Provident's denial of his November 2003 request for reconsideration, the court need not repeat the analysis set forth in the preceding section. Rather, it is sufficient to note that plaintiff has not identified a single instance in which Provident failed to comply with a specific time limit set forth in either the Plan documents or in the Department of Labor regulations that implement ERISA. Thus, with respect to his allegations of untimeliness, plaintiff has failed to establish the existence of procedural irregularities of any kind, to say nothing of his failure to produce any evidence suggesting that Provident's decision was motivated by a "serious" conflict of interest. *See Barnett*, 32 F.3d at 416.

Plaintiff also contends that Provident's September 24, 2003 denial letter did not comply with 29 C.F.R. § 2560.503–1(g), which requires a plan administrator to provide a person whose claim has been denied with "[a] description of any material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary," as well as "[a] description of the review procedures and the time limits applicable to such procedures." 29 C.F.R. § 2560.503–1(g)(1)(iii)–(iv).[9] However, after plaintiff's request for review was denied, there was nothing further that he could have done to perfect his claim, nor was there "any material or information" that plaintiff could have submitted that would have affected Provident's conclusion. Under similar circumstances, the Ninth Circuit has held that a plan administrator

---

**9.** Rather than relying on section 2560.503–1(g)(1)(iii)–(iv), plaintiff cites to the former 29 C.F.R. § 2560.503–1(f)(3)–(4), which applies to any disability benefit claim filed before January 1, 2002. *See* 65 Fed.Reg. at 70,249. For the purpose of resolving the issues raised by plaintiff's motion, the two sections are substantially identical, and the court need not consider whether the pre-2002 regulations apply to either or both of plaintiff's claims from short- and long-term disability benefits.

has no duty to specify what "appropriate information" a beneficiary must submit when any additional request for review would be futile. *See Jordan,* 370 F.3d at 881 (rejecting claim based on the administrator's failure to describe additional material necessary to perfect a claim where any evidence that the beneficiary could have produced in response to the administrator's denial "would have made no difference"). Both the Ninth Circuit's views and common sense preclude the court from reaching a different conclusion here.

In sum, plaintiff fails to point to any procedural irregularities or structural discrepancies in Provident's claims processing procedures that would suggest that the calculation of his disability benefits was influenced by its financial interest in that decision. Accordingly, the court rejects plaintiff's contention that it should apply a de novo standard of review on the basis of Provident's conflict of interest.

## IV. *Summary*

Having considered each of plaintiff's arguments and concluded that plaintiff has failed to identify any reason why the "discretionary clause" of Provident's policy should not be enforced, the court holds that there is no basis for invoking de novo review in the instant action. Thus, because there is no material dispute of fact with respect to this conclusion, the court grants defendants' motion for partial summary judgment. The court will therefore review Provident's denial of plaintiff's request for additional disability benefits under an abuse of discretion standard.

## *CONCLUSION*

For the reasons stated above, defendants' motion for partial summary judgment is GRANTED. Plaintiff's motion for

partial summary judgment is DENIED. The court will review defendants' decision regarding plaintiff's claim for disability benefits under an abuse of discretion standard.[10]

IT IS SO ORDERED.

---

**10.** In addition, defendants' November 1, 2004 objections to plaintiff's evidence in support of his motion for summary judgment are denied as moot.